[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12838
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-22679-ASG

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

HIALEAH HOUSING AUTHORITY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 22, 2011)

Before BARKETT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

The United States brought this lawsuit, on behalf of Miguel Rodriguez

("Mr. Rodriguez") and his family, against Hialeah Housing Authority ("HHA") for

violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq. The United States claimed that HHA failed to provide Mr. Rodriguez with a reasonable accommodation for an alleged disability. The district court granted HHA's motion for summary judgment after concluding that no genuine issue of material fact existed as to whether HHA knew or could have known about Mr. Rodriguez's disability and the necessity for accommodation. The United States now appeals that order, and HHA moves for sanctions under Federal Rule of Appellate Procedure 38, arguing that this appeal is frivolous. After a thorough review of the record and the parties' briefs, as well as the motion for sanctions and the briefs supporting and opposing that motion, we deny HHA's motion for sanctions, reverse the district court's grant of summary judgment in favor of HHA, and remand the case to the district court for further proceedings consistent with this opinion.

## I.

We review de novo the district court's grant of summary judgment. Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether a genuine issue of material fact remains

for trial, [we] must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Loren, 309 F.3d at 1301–02 (quotation marks omitted).

These are the relevant facts, viewed in the light most favorable to the United States. The Rodriguez family lived in an HHA apartment at Project 16 until HHA decided to terminate the family's public housing tenancy after Joel Bonilla, HHA's Area Supervisor, determined that he could not resolve or otherwise prevent disputes between the Rodriguez family and a neighboring family. On or about January 3, 2005, HHA served the Rodriguez family with a thirty-day notice to vacate, and the family requested an informal hearing to contest the termination of their tenancy. HHA appointed Chabela Aneiros as the hearing officer to preside over that informal hearing. The hearing took place on January 20, 2005, with Bonilla also present on behalf of HHA.

At the hearing, Mr. Rodriguez presented Aneiros with "documents showing that [he] was sick," and Aneiros acknowledges she was aware at the time of the hearing that Mr. Rodriguez had health problems due to an accident. Aneiros asked Bonilla if HHA had another unit to which the Rodriguez family could be transferred, and Bonilla said that there was a unit at Hoffman Gardens, another HHA property. Aneiros offered the Rodriguez family the option of accepting a

3

transfer from Project 16 to the vacant unit at Hoffman Gardens in lieu of terminating the tenancy. Mr. Rodriguez and his wife, Lazara Rodriguez ("Mrs. Rodriguez"), advised Bonilla and Aneiros that Mr. Rodriguez "had difficulty climbing stairs" and therefore the family "needed a unit with a bathroom that was accessible without climbing stairs." Aneiros would not allow the Rodriguez family to view the unit before accepting the agreement, but told Mr. Rodriguez that according to Bonilla the unit at Hoffman Gardens "ha[d] a bathroom upstairs and downstairs." Based on this representation, the Rodriguez family agreed to the arrangement, and before the conclusion of the hearing, Mr. Rodriguez executed a transfer agreement acknowledging his acceptance of the unit at Hoffman Gardens.

But when the family went to look at the Hoffman Gardens apartment, they found that there was no bathroom on the first floor. On January 21, 2005, the day after the informal hearing, Mrs. Rodriguez delivered a letter to Aneiros, which stated: "[W]e want to appeal . . . the decision about the transfer, because we did not realize that we did not see the conditions of the place first. . . . There is no bathroom downstairs and [Mr. Rodriguez] and I had surgery, we can not go upstairs each time we need to use the bathroom." HHA did not respond to Mrs. Rodriguez's letter. Instead, on January 24, 2005, Aneiros sent a letter dated

4

January 21, 2005 stating that the decision to terminate the Rodriguez family's public housing tenancy had been upheld.

On May 4, 2005, HHA filed an action to evict the Rodriguez family from the Project 16 apartment. On or about May 17, 2005, the Rodriguez family filed an answer through counsel, which asserted as an affirmative defense that Mr. Rodriguez was disabled due to hip and back problems and that he could not constantly go up and down stairs to use a bathroom. On June 30, 2005, the Rodriguez family and Bonilla, together with the parties' attorneys, attended a court-ordered mediation in relation to the eviction. The attorney for the Rodriguez family explained that Mr. Rodriguez had a disability that prevented him from going up and down stairs, and for that reason he had rejected the transfer to the Hoffman Gardens apartment.[1]

HHA acknowledges that at the mediation it became "aware that Rodriguez had an alleged disability that prevented him from climbing stairs." HHA offered to transfer the Rodriguez family to the same units previously offered at Hoffman Gardens, and refused to allow the family to remain in their existing unit at Project

---

[1] The United States also claims that during the mediation Mr. Rodriguez presented a letter dated June 10, 2005, from his treating physician, Dr. Nunez, which stated: "This is to certify that [Mr. Rodriguez has been] my patient since May 1997. His diagnos[e]s are . . . 3) osteoarthritis; 4) depression; 5) chronic shoulder pain; and 6) chronic back pain. He is see[ing] a pain specialist also. He will benefit [from] a stable and relax[ed] environment." However, as the district court observed, there is no evidence that this letter was actually presented at the mediation.

16. HHA offered to put the family on a waiting list for a unit that met Mr. Rodriguez's needs, but insisted that the family would be required to vacate its unit at Project 16 while waiting for a suitable unit to become available. The Rodriguez family rejected this arrangement, and instead entered into an agreement to vacate the Project 16 unit by August 31, 2005.

On or about June 28, 2006, Mr. Rodriguez filed a complaint with the Department of Housing and Urban Development ("HUD") alleging that HHA denied his request to reasonably accommodate him due to his hip and back disability. Based on HUD's determination that there was reasonable cause to believe that HHA discriminated against Mr. Rodriguez, the United States filed this action under 42 U.S.C. § 3612(o).

## II.

Under the FHA, it is unlawful to discriminate against a person by refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To prevail on a failure to accommodate claim, "a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him

an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc., 347 F. App'x 464, 467 (11th Cir. 2009) (unpublished); see Schwarz v. City of Treasure Island, 544 F.3d 1201, 1219 (11th Cir. 2008); DeBois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.3d 1175, 1179 (9th Cir. 2006). We have explained that "[w]hether a requested accommodation is required by law is highly fact-specific, requiring case-by-case determination." Loren, 309 F.3d at 1302 (quotation marks omitted).

In granting HHA's motion for summary judgment, the district court concluded that "even assuming *arguendo* that Mr. Rodriguez is disabled, no reasonable jury could conclude that [HHA] knew or should have known Mr. Rodriguez was disabled and that HHA knew the requested accommodation was necessary." We have explained that "a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." Schwarz, 544 F.3d at 1219. As such, HHA "cannot be liable for refusing to grant a reasonable and necessary accommodation if [HHA] never knew the accommodation was in fact necessary." Id. (quoting Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1275 (10th Cir. 2001)). But "[i]f a landlord is skeptical of a tenant's alleged disability or the landlord's ability to

7

provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue." Jankowski Lee & Assocs. v. Cisneros, 91 F.3d 891, 895 (7th Cir. 1996). The questions before us then are (1) whether a reasonable jury could conclude that HHA had notice of Mr. Rodriguez's claimed disability and the necessity of his requested accommodation,[2] and (2) whether HHA refused to provide the requested accommodation. We believe that disputed issues of material fact remain as to both questions. We address them in turn.

A.

First, genuine issues of material fact remain as to whether HHA had notice of Mr. Rodriguez's claimed disability and his requested accommodation. We have previously recognized that we look to case law under the Rehabilitation Act and the Americans with Disabilities Act ("ADA") for guidance in evaluating reasonable accommodation claims under the FHA. Schwarz, 544 F.3d at 1220. This Court has held that under the Rehabilitation Act and the ADA, "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999); see also Wood v. President & Trustees of

---

[2] We reject HHA's argument that the United States failed to appeal the district court's ruling that "no reasonable jury could conclude . . . that HHA knew the requested accommodation was necessary." The United States' opening brief adequately raised this issue.

Spring Hill College in the City of Mobile, 978 F.2d 1214, 1222 (11th Cir. 1992). "[T]he duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants must instead have . . . the ability to conduct a meaningful review of the requested accommodation . . . ." Schwarz, 544 F.3d at 1219 (quotation marks omitted).

Although we have not "determined precisely what form the request must take," Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1261 n.14 (11th Cir. 2007), some of our sister circuits have addressed what qualifies as an adequate demand under the ADA. For example, the Tenth Circuit has explained that under Title I of the ADA a plaintiff "need not use magic words," but "should provide enough information about his or her limitations and desires so as to suggest at least the possibility that reasonable accommodation may be found in a reassignment job within the company." Smith v. Midland Brake, Inc. 180 F.3d 1154, 1172 (10th Cir. 1999). Similarly, the Third Circuit has stated that "[w]hat matters under the ADA are not formalisms about the manner of the request, but whether the employee . . . provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999). This same standard applies in the context of the FHA. See

9

<u>Schwarz</u>, 544 F.3d at 1220. In other words, for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant "must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [landlord] to make appropriate inquiries about the possible need for an accommodation." <u>Colwell v. Rite Aid Corp.</u>, 602 F.3d 495, 506 (3d Cir. 2010) (quotation marks omitted).

In this case, the United States points to four instances in which it contends the Rodriguez family put HHA on notice of Mr. Rodriguez's disability and the necessity of the accommodation. First, the United States points to Mr. Rodriguez's presentation of documents "showing that [he] was sick" at the informal hearing on January 20, 2005, and to his statements during that hearing that he "had difficulty climbing stairs," and therefore "needed a unit with a bathroom that was accessible without climbing stairs." Second, the United States points to Mrs. Rodriguez's letter to Aneiros on January 21, 2005, which stated that Mr. and Mrs. Rodriguez "had surgery," and "[could not] go upstairs each time [they] need to use the bathroom." Third, the United States identifies the Rodriguez family's answer in the eviction action, which asserted as an affirmative defense that Mr. Rodriguez was disabled due to hip and back problems and that he

10

could not constantly go up and down stairs to use a bathroom. Finally, the United States points to the court-ordered mediation in the eviction case, during which counsel for the Rodriguez family explained that Mr. Rodriguez had a disability that prevented him from going up and down stairs, and for that reason he had rejected the transfer to the Hoffman Gardens apartment.

We decline to decide whether the January 20, 2005 informal hearing or the January 21, 2005 letter were sufficient, by themselves, to put HHA on notice of Mr. Rodriguez's alleged disability and his need for an accommodation. But we have concluded that at least the statements made during the court-ordered mediation are sufficient to allow a reasonably jury to find that Mr. Rodriguez made a specific demand for an accommodation. That mediation took place as part of a court proceeding in which Mr. Rodriguez had already asserted through counsel that he was disabled due to hip and back problems and could not constantly go up and down stairs to use a bathroom.[3] Mr. Rodriguez's attorney explained again during the mediation that Mr. Rodriguez had rejected the transfer because his disability prevented him from going up and down stairs. In fact, HHA

---

[3] Indeed, we leave open the question of whether the Rodriguez family's answer to the eviction complaint might alone have been sufficient. We are aware that the district court may not have had occasion to consider this, as the United States in its brief in opposition to summary judgment did not point to the answer in the eviction matter as an instance in which HHA was told of Mr. Rodriguez's disability.

acknowledges that during the mediation "Bonilla was . . . made aware that Rodriguez had an alleged disability that prevented him from climbing the stairs." We conclude that at this point HHA had enough information to know of both Mr. Rodriguez's disability and his desire for an accommodation. In other words, Mr. Rodriguez had made a specific demand sufficient to trigger HHA's duty to provide a reasonable accommodation. See Gaston, 167 F.3d at 1363. If HHA was "skeptical of [Mr. Rodriguez's] alleged disability or [its] ability to provide an accommodation, it [was] incumbent upon [HHA] to request documentation or open a dialogue." Jankowski Lee & Assocs., 91 F.3d at 895. HHA contends that it did exactly that, and we address this argument next, in considering whether genuine issues of material fact remain as to whether HHA refused to provide the requested accommodation.

B.

We also conclude that genuine issues of material fact remain as to whether HHA refused to provide the requested accommodation. HHA asserts that once Bonilla became aware of Mr. Rodriguez's disability and accommodation request during the June 30, 2005 mediation, he advised counsel for the Rodriguez family to provide HHA with medical documentation to support the alleged disability, and explained that once verified medical documentation was provided, Mr. Rodriguez

12

would be allowed to remain at the Project 16 unit until another unit suited to his needs became available. HHA contends that Mr. Rodriguez did not provide any medical documentation, and instead agreed to voluntarily abandon his tenancy in exchange for HHA allowing him to remain at the Project 16 unit until August 31, 2005.

In contrast, the United States asserts that HHA offered to transfer the Rodriguez family to the same unacceptable units previously offered at Hoffman Gardens, and refused to allow the family to remain in their existing unit at Project 16. The United States concedes that HHA offered to put the family on a waiting list for a unit that met Mr. Rodriguez's needs, but it asserts HHA would require the family to move out of the Project 16 unit while waiting for a suitable unit to become available.[4] This factual dispute over the specifics of the arrangement offered by HHA precludes summary judgment on this ground. Under the facts viewed in the light most favorable to the United States, HHA insisted that Mr. Rodriguez would have to move into a unit without his requested accommodation for an indefinite period of time. Under the FHA, the denial of an accommodation

---

[4] As noted above, the United States also contends that during the mediation, Mr. Rodriguez presented a letter from his treating physician, Dr. Nunez, but the district court correctly observed that there is no evidence that this letter was actually presented at the mediation.

13

"can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial." Groome Resources Ltd. v. Parish of Jefferson, 234 F.3d 192, 199 (5th Cir. 2000). We conclude therefore that HHA's requirement that Rodriguez family vacate their apartment at Project 16 and move into units without the requested accommodation for an indefinite period of time constitutes at least a constructive refusal to provide the accommodation.[5]

## C.

Finally, we note that at least two issues of law remain to be addressed at the summary judgment stage. First, the district court assumed without deciding that Mr. Rodriguez was disabled. HHA asks us to reach this issue on appeal, but we decline to do so. Instead, we remand the case to the district court to pass on this issue in the first instance. See Schwarz, 544 F.3d at 1218 ("Since the district court did not determine whether there is a genuine issue of material fact on the 'necessity' element, we remand only that issue so that it may review the summary

---

[5] This conclusion is not altered by the fact that the Rodriguez family, rather than face eviction or accept HHA's proposal, subsequently chose to enter into a settlement agreement under which it would be allowed two extra months to find a new place to live. "Under the Fair Housing Act, . . . a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings." Bryant Woods Inn, Inc. v. Howard Cnty., Md., 124 F.3d 597, 602 (4th Cir. 1997). Viewing the facts in the light most favorable to the United States, the constructive denial of Mr. Rodriguez's accommodation claim was complete at the mediation. The Rodriguez family's actions after, and in response to, that denial are irrelevant to the analysis.

14

judgment record in the first instance.").  Likewise, we decline to decide in the first instance whether HHA was not required to provide a reasonable accommodation because the Rodriguez family was a direct threat under 42 U.S.C. § 3604(f)(9).

For these reasons, we **REVERSE** the district court's grant of summary judgment in favor of HHA, and **REMAND** the case to the district court for further proceedings consistent with this opinion.  We also **DENY** HHA's motion for sanctions.