# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 26, 2014 Session

## ANNIE HARRIS v. METROPOLITAN DEVELOPMENT AND HOUSING AGENCY

**Appeal from the Circuit Court for Davidson County**
**No. 12C-273      Thomas W. Brothers, Judge**

---

**No. M2013-01771-COA-R3-CV - Filed April 28, 2014**

---

Former tenant of an apartment complex whose lease was terminated for an alleged breach sued alleging violations of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq*. Specifically, the former tenant contends the defendant failed to make reasonable accommodations in violation of Tenn. Code Ann. § 4-21-601(b)(2)(B); she also contends it intentionally discriminated against her due to her disabilities in violation of Tenn. Code Ann. § 4-21-311(e). The defendant denied all claims and moved for summary judgment contending the plaintiff could not establish essential elements of her claims; it also contended it terminated the lease on legitimate, nondiscriminatory grounds. The trial court summarily dismissed the complaint, finding there were no genuine issues of material fact as to whether the landlord violated the Tennessee Human Rights Act. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Annie Harris.

Tyler Chance Yarbro and Margaret Behm, Nashville, Tennessee, for the appellee, Metropolitan Development and Housing Agency.

## OPINION

The Metropolitan Development and Housing Agency ("MDHA") is a governmental agency that provides affordable housing to low-income individuals and persons with disabilities. Annie Harris ("Plaintiff") was a tenant of a MDHA apartment for over twenty years and it is undisputed that Plaintiff has been disabled at all material times, attributable

to diabetes and kidney failure. Her twenty-five year old grandson, Raco Harris, resided with her for years.

Section 8.1 of MDHA's lease agreement stated that tenants agreed "[n]ot to destroy, deface, damage, or remove any part of the premises or property. Not to allow my family or guests to do this."

On May 26, 2011, a senior maintenance technician performed a routine property inspection of the premises and discovered a floodlight outside Plaintiff's apartment had been disabled. On June 6, 2011, the senior maintenance technician responded to a work order request from a tenant whose apartment was located across the walkway from Plaintiff's apartment. This tenant informed MDHA that the floodlight on her apartment, as well as the one on Plaintiff's apartment, had been torn from the wall, leaving gaping holes in the siding and exposed electrical wires hanging out of the holes.

MDHA staff frequently found light bulbs removed from floodlight fixtures at MDHA properties; it was believed this was done by individuals who wanted to engage in illegal activities under the cover of darkness. Although no one saw who damaged the flood lights, MDHA maintenance personnel suspected Raco Harris had vandalized the property.[1] The following day, Joe Sorrells, MDHA's property manager, submitted a request to MDHA's legal counsel to issue a thirty-day notice notifying Plaintiff that the lease was being terminated for violations of Section 8.1 of the lease agreement. As requested, the notice was sent to Plaintiff.

Plaintiff promptly responded to the termination notice in a letter to MDHA on June 13, 2011, stating that the floodlights outside her apartment were never missing and she suggested MDHA confused her apartment with another apartment; she also objected to the termination of her lease. As a result of Plaintiff's response, a grievance hearing was scheduled for Plaintiff to contest the lease termination.

---

[1] An MDHA senior maintenance technician witnessed a group of people he recognized as being "involved in drug activity" chase Raco Harris into Plaintiff's apartment on one occasion. Based on this, the MDHA staff "suspected" Raco was using drugs; however, there is no proof that Raco was using drugs nor is there any proof whatsoever that Raco removed or damaged any floodlights. Other maintenance technicians and two tenants experienced verbal confrontations with Raco but, again, no one saw him use drugs or damage property at the apartment complex.

When informed of the hearing date, Plaintiff's daughter called MDHA to explain that Plaintiff's dialysis appointment conflicted with the date of the hearing.[2] In an effort to accommodate Plaintiff, a special docket was set for Plaintiff's grievance hearing.

The grievance hearing was held on August 31, 2011. The property manager testified that MDHA maintenance personnel discovered the floodlight had been removed from Plaintiff's apartment in a manner that amounted to destruction of property. He also stated that it caused an unsafe condition due to exposed electrical wires. He additionally stated that he did not believe Plaintiff was living at the apartment and that if she had been living there, she would have known her floodlight had been removed.

Plaintiff attended the hearing and, again, insisted that her floodlight had never been out and the broken light was not on her apartment. When questioned as to whether she had been living at the apartment, Plaintiff said she had been staying in rehab for therapy following the partial amputation of her feet; however, Plaintiff then conceded she was mistakenly referring to her stay at a rehabilitation facility in 2009.[3] Although Plaintiff was not living at the apartment when these events occurred, and only Raco Harris was living there, the hearing officer's ruling was not based on her absence. As the hearing officer explained in a subsequent affidavit:

> 4. On August 31, 2011, I presided over a hearing wherein Annie Harris contested the termination of her lease by MDHA. I recently listened to the audio recording of this hearing.
>
> 5. At that hearing I heard testimony from the Neighborhood Housing Property Manager Joe Sorrells, Ms. Harris, and Ms. Harris' daughter. Mr. Sorrells explained the reasons why MDHA was seeking to terminate Ms. Harris' lease. Ms. Harris and her daughter responded to Mr. Sorrells' testimony.
>
> 6. Mr. Sorrells presented valid reasons as for wanting to terminate Ms. Harris' lease that had nothing to do with Ms. Harris' disability. Indeed, I recognize that MDHA provides housing to many disabled individuals.

---

[2]During this conversation, Plaintiff's daughter stated that Plaintiff "was not living at her MDHA apartment and was living with her." Plaintiff's lease requires tenants to reside in their apartments and to give notice to MDHA when they will be away from the premises in excess of 14 days.

[3]In 2009, Plaintiff informed MDHA of a surgery that required her to be away from the apartment for more than 14 days; MDHA permitted Plaintiff leave for several months while she recovered from surgery. Raco continued to stay in the apartment while Plaintiff was away.

7. At the hearing, Ms. Harris did not request any accommodation because of her disability. Instead, she maintained that her light fixture was not damaged.

8. Based on the testimony I heard, I decided that MDHA could terminate Ms. Harris' lease. Her medical condition or disability was not a factor whatsoever in my decision.

The hearing officer determined that Plaintiff violated Section 8.1 of the lease that required tenants and their guests not to destroy or deface MDHA property and that a legitimate basis for termination of the lease had been established. Plaintiff was notified of the ruling in a letter dated September 6, 2011, and was instructed to vacate the premises within ten days of receiving the letter. Plaintiff immediately vacated the premises and did not file a direct appeal from the grievance hearing decision.

Four months later, on January 20, 2012, Plaintiff commenced this action, alleging she was a disabled person and by terminating her lease MDHA violated the Tennessee Human Rights Act ("the THRA"), Tenn. Code Ann. § 4-21-101 *et seq*. MDHA filed an Answer denying any form of discrimination and all claims asserted.[4]

Following discovery, MDHA filed a motion for summary judgment asserting there were no genuine issues of material fact and that Plaintiff could not establish the elements of her claim of discrimination. MDHA asserted that Plaintiff never requested an accommodation; therefore, any claim that MDHA refused to provide a reasonable accommodation should fail as a matter of law. Further, MDHA asserted that Plaintiff cannot provide any evidence that MDHA terminated her lease because of her disability, nor can she establish a prima facie case of intentional discrimination.[5]

The motion for summary judgment was heard on June 28, 2013. The trial court found there were no genuine issues of material fact and that MDHA had not violated the THRA. Accordingly Plaintiff's complaint was summarily dismissed.

---

[4]Raco Harris was an additional plaintiff in the complaint, which also asserted a claim for intentional infliction of emotional distress. When MDHA filed a motion to dismiss, Plaintiffs moved to amend their complaint. The first amended complaint removed all claims asserted by Raco Harris; thus, he was dropped from the suit. It also dropped all of Plaintiff's claims with the exception of her THRA claims.

[5]MDHA also contended Plaintiff's lease was terminated based on legitimate, nondiscriminatory reasons regarding the safety and welfare of its tenants and violations of the lease, and that Plaintiff did not have standing, as she cannot show she was injured by MDHA's allegedly discriminatory actions because she was not residing at the apartment when the events at issue occurred or when the lease was terminated.

Plaintiff appeals contending the trial court erred in summarily dismissing the complaint because there are genuine issues of material fact concerning whether the MDHA violated the THRA. More specifically, Plaintiff contends MDHA violated Tenn. Code Ann. § 4-21-601(b)(2)(B) by failing to accommodate her disabilities by "refusing to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Plaintiff also contends the reason stated for terminating the lease was a pre-text for intentional discrimination or retaliation due to Plaintiff's disability in violation of Tenn. Code Ann. § 4-21-311(e).

## ANALYSIS

To be entitled to summary judgment, the moving party who does not bear the burden of proof at trial (MDHA in this case) shall prevail if it submits affirmative evidence that negates an essential element of the nonmoving party's claim or demonstrates that evidence provided by the nonmoving party (Plaintiff in this case) is insufficient to establish an essential element of the nonmoving party's claim. Tenn. Code Ann. § 20-16-101 (applicable to actions filed on or after July 1, 2011).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn.2003). The resolution of a motion for summary judgment is a matter of law, thus, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn.2008). The appellate court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1977).

### I. FAILURE TO ACCOMMODATE

Plaintiff alleges MDHA "essentially place[d] her in the same status as a non-disabled person, and held her to that standard" when it evicted her for doing something only a "non-disabled person could have done."[6]

---

[6]The record is devoid of any credible evidence to support a finding that Plaintiff, her grandson Raco
(continued...)

It is a violation of the THRA to discriminate against "any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability." Tenn. Code Ann. § 4-21-601(b)(1)(B). Discriminatory practice includes, "refusing to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." Tenn. Code Ann. § 4-21-601(b)(2)(B).

In order to prevail on a failure to accommodate claim under the THRA, Plaintiff must establish that (1) she has a disability within the definition of the statute; (2) she requested a reasonable accommodation; (3) the requested accommodation was necessary to afford her an opportunity to use and enjoy her dwelling; and (4) the defendant refused to make the requested accommodation. *United States v. Hialeah Housing Authority*, 418 Fed. Appx. 872, 875 (11th Cir. 2011) (interpreting such a claim under the federal counterpart Fair Housing Act; internal citations omitted).

With regard to the first element stated above, it is undisputed that MDHA knew of Plaintiff's disability; thus, Plaintiff established the first essential element. However, Plaintiff failed to establish, or even create a genuine issue that she requested a reasonable accommodation or that the requested accommodation was necessary to afford her an opportunity to use and enjoy her dwelling. Therefore, Plaintiff cannot establish, nor create a genuine dispute of fact, that MDHA *refused* to make the requested accommodation.

It is also relevant that Plaintiff had the burden to initiate a conversation with MDHA about her alleged need for a reasonable accommodation. *Hialeah Housing Authority*, 418 Fed. Appx. at 875. Moreover, Plaintiff had the responsibility to inform MDHA when and in what manner she needed an accommodation in order for MDHA to determine whether it had a duty to provide the requested accommodation. *See Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1219 (11th Cir. 2008). She did neither, thus, MDHA did not refuse to make a reasonable accommodation.

The foregoing considered, the record fully supports the determination that Plaintiff's evidence was insufficient to establish an essential element of her failure to accommodate claim. Accordingly, this claim could not survive summary judgment.

---

[6](...continued)
Harris, or her guests damaged any MDHA property in violation of Section 8.1 of the lease. That issue, however, is not before the court; therefore, we shall limit our analysis to whether MDHA's acts or omissions at issue were in violation of the THRA.

## II. INTENTIONAL DISCRIMINATION

To prevail on an intentional discrimination claim under the THRA, a plaintiff must first establish a prima facie case of intentional discrimination or retaliation, which is accomplished by a showing of disparate or differential treatment.[7] Tenn. Code Ann. § 4-21-311(e); *see Philips v. Interstate Hotels Corp.*, 974 S.W.2d 680, 684-87 (Tenn. 1998). As Tennessee Code Annotated § 4-21-311(e) expressly provides:

> In any civil cause of action alleging a violation of [the Tennessee Human Rights Act] . . . , the plaintiff shall have the burden of establishing a prima facie case of intentional discrimination or retaliation. If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the challenged employment action. The burden on the defendant is one of production and not persuasion. If the defendant produces such evidence, the presumption of discrimination or retaliation raised by the plaintiff's prima facie case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation. The foregoing allocations of burdens of proof shall apply at all stages of the proceedings, including motions for summary judgment. The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff has been the victim of intentional discrimination or retaliation.

Tennessee's burden shifting protocol in discrimination cases is substantially similar to that followed in the United States Sixth Circuit Court. *See U.S. v. Fountainbleau Apartments L.P.*, 566 F.Supp.2d 726, 733 (E.D. Tenn. 2008); *see also Marbly v. Home Properties of New York*, 205 F.Supp.2d 736, 739 (E.D. Mich. 2002). As the court explained in *Fountainbleau*, "[t]o prevail on a disparate treatment in housing claim, a plaintiff must come forward with evidence that he was treated differently than 'similarly situated' tenants."[8] *Id.* (citing *Marbly* at 745). *Fountainbleau* also explained that other district courts have phrased the disparate treatment analysis in this way:

---

[7]The requirements of a prima facie case of unlawful discrimination can vary depending on the context; the requirements were "never intended to be rigid, mechanized, or ritualistic." *Wilson v. Rubin,* 104 S.W.3d 39, 51 (Tenn. Ct. App. 2002) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

[8]The plaintiff in *U.S. v. Fountainbleau Apartments* asserted claims under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, relating to the defendants' alleged discrimination against applicants with children who applied for housing at the Fountainbleau Apartments. *Id*., 566 F.Supp.2d at 733.

[t]o establish a prima facie case of disparate treatment predicated upon 42 U.S.C. § 3604(b) the plaintiffs must make a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination.

*Fountainbleau Apartments L.P.*, 566 F.Supp.2d at 733 (internal citations omitted).

In its Motion for Summary Judgment, MDHA contended Plaintiff failed to establish a prima facie case of discrimination, noting that Plaintiff failed to present any evidence to support a finding that she was treated differently than similarly situated tenants with respect to the termination of her lease. *See Philips v. Interstate Hotels Corp.*, 974 S.W.2d at 684-87. Specifically, MDHA noted that Plaintiff presented no evidence indicating that she was treated differently with respect to her lease than other similarly situated MDHA tenants outside of her protected class.

As MDHA contended, Plaintiff presented no evidence of being treated differently, she merely asserted, without citing to any evidence, that MDHA had no evidence that she or her guests violated the lease. Therefore, she contended that MDHA's stated reason for terminating the lease, damage to property, was merely a pre-text and the real reason for termination was because she was disabled. Unfortunately for Plaintiff, her unsupported contention of disparate or differential treatment due to her disability does not establish a prima facie case of intentional discrimination or retaliation as mandated by Tenn. Code Ann. § 4-21-311(e). Moreover, because Plaintiff failed to establish a prima facie case of intentional discrimination or retaliation, the burden never shifted to MDHA to produce evidence that its stated reason for terminating the lease was not pre-textual. *See* Tenn. Code Ann. § 4-21-311(e). Accordingly, MDHA was not required to respond to Plaintiff's pre-textual contention.

In any civil cause of action alleging a violation of the THRA, the plaintiff has the burden of establishing a prima facie case of intentional discrimination, *see* Tenn. Code Ann. § 4-21-311(e), and Plaintiff failed to identify any evidence that she was treated differently or less favorably than similarly situated tenants who were not members of her protected class. Therefore, we find no error with the decision to summarily dismiss Plaintiff's claim of intentional discrimination.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Plaintiff.

_____
FRANK G. CLEMENT, JR., JUDGE