[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14863
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-00260-AT

PIERRE R. CAZEAU,

Plaintiff-Appellant,

versus

WELLS FARGO BANK, N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 10, 2015)

Before TJOFLAT, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Pierre Cazeau, proceeding *pro se*, appeals the district court's order granting summary judgment in favor of his former employer, Wells Fargo Bank, N.A. ("Wells Fargo"), in his suit alleging federal claims of retaliation, discriminatory pay, and discrimination on the basis of his national origin, disability, and gender. On appeal, he raises various challenges to the district court's judgment. After careful review, we conclude that summary judgment was properly granted on all claims and therefore affirm.

## I. Background

Cazeau, a male of Haitian origin, worked as a teller at a Wells Fargo bank branch in Conyers, Georgia. He began working for Wells Fargo in 2004, and had been at the Conyers branch since 2006. In December 2009, Chris Williams, an African-American female, became Cazeau's immediate supervisor. Williams, a Service Manager, reported to the Store Manager, Mike Peoples, a Caucasian male. Cazeau was promoted to Lead Teller in March 2011.

In January 2012, Cazeau submitted a letter to Peoples complaining about harassment and bullying at the Conyers branch. In the letter, Cazeau alleged that Williams had accused him of stealing, had talked to him like a child, and had made comments about his needing to take medication. He also alleged that two other bank tellers bullied him, called him names, made similar comments about medication, and made "homosexual remarks." Cazeau then discussed these

2

allegations with a human-resources representative. At the end of January 2012, Peoples met with Williams and Cazeau to discuss the situation.

At his deposition, Cazeau testified that Williams, in addition to other bullying and harassing comments, also had made fun of his national origin, telling him, "This is America; you need to speak English," when he spoke Creole with his wife or with Haitian customers. Further, Cazeau testified, Williams questioned his immigration status and asked him whether he married to get immigration papers.

In January 2012, Cazeau applied for the position of Service Manager at another Wells Fargo branch. Cazeau was not hired or interviewed for the position. The Wells Fargo recruiter who reviewed the applications testified that he did not select Cazeau to be interviewed because of an internal policy limiting eligibility to employees who had been in their current position for at least twelve months, unless the requirement is waived by a manager or by human resources. A non-Haitian female was hired in February 2012.

Cazeau filed a charge of discrimination based on national origin, disability, and retaliation with the Equal Opportunity Employment Commission ("EEOC") on April 16, 2012. Cazeau alleged that he had been subjected to harassment at work and denied the Service Manager position.

In April 2012, Cazeau went on paid medical leave for anxiety and depression. That leave expired in August. Thereafter, he transitioned to unpaid

3

medical leave.  He received a letter from Wells Fargo on August 16, 2012, stating that he had exhausted his twelve weeks of leave and job-protection rights under the Family and Medical Leave Act as of July 6, 2012.  He received another letter in September stating that he had been approved for unpaid leave through October 15, 2012, which was the date his physician indicated he could return to work.

Cazeau called Peoples in September 2012 to talk about returning to work.  During that discussion, Cazeau learned that Wells Fargo had filled his position, leaving him without a job to which to return.  Peoples told Cazeau to contact human resources.

Cazeau called human resources on October 10, 2012, and was told that someone would follow up with him.  No one called him back, however, and he never followed up.  Several days later, Cazeau received a letter from Wells Fargo stating that he had been placed on "job search" leave, which would last through January 13, 2013, or until he found a position.  The letter states that Cazeau would be contacted by the "Wells Fargo Career Connection Team" to provide information about the job-search process, and it provides details for accessing online information about available positions with Wells Fargo.  Cazeau did not apply for any position.  His employment was terminated effective January 15, 2013.

Cazeau filed a second EEOC charge in December 2012, alleging discrimination on the basis of race, national origin, sex, disability, and retaliation,

4

based on his position being filled in August and his belief that he was being paid less than a female teller. He amended the charge in January 2013 to allege that Wells Fargo had failed to provide a reasonable accommodation by placing him into another position when he was able to return to work in October 2012.

After receiving his right-to-sue notices from the EEOC, Cazeau brought suit against Wells Fargo in the United States District Court for the Northern District of Georgia. He alleged federal claims of retaliation, discriminatory pay, and discrimination on the basis of national origin, gender, and perceived disability. Cazeau brought his claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); and the Equal Pay Act ("EPA"), 29 U.S.C. § 206. He later amended his complaint to allege a libel claim under Georgia state law. Wells Fargo moved for summary judgment on all claims.

In a comprehensive report and recommendation, the magistrate judge recommended granting Wells Fargo's summary-judgment motion. Over Cazeau's objections, the district court adopted the magistrate judge's recommendation and entered judgment in favor of Wells Fargo. Cazeau now brings this appeal.

## II. Standard of Review

"We review *de novo* a district court's grant of summary judgment, viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving

party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We liberally construe the pleadings and briefs of *pro se* parties. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Nonetheless, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned. *Timson*, 518 F.3d at 874.

Construed liberally, Cazeau's brief argues that Cazeau established genuine issues of material fact precluding summary judgment on his federal claims under Title VII, the ADA, and the EPA. It does not address the district court's decision to decline to exercise supplemental jurisdiction over Cazeau's state-law libel claim, so we consider the issue abandoned. *See id.*

### III. Title VII Claims

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Claims of discrimination may be supported by either direct or circumstantial evidence. When a claim is based on circumstantial evidence, we generally apply the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Vessels*, 408 F.3d at 767. Under this framework,

the plaintiff must first create an inference of discrimination by making out a *prima facie* case. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If the employer does so, "the inference of discrimination drops out of the case entirely," and the plaintiff then has the opportunity to show that the employer's proffered reasons were pretextual. *Id.* at 768. The plaintiff's burden at the pretext stage "merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against [him]." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

A.    *Failure to Promote, Replacement, and Termination*

Generally, an employee establishes a *prima facie* case of discrimination under Title VII by showing the following: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). When the claim is based on a failure to promote, a plaintiff makes out a *prima facie* case by showing that he applied and was qualified for a position that was filled by someone outside of his protected class. *Vessels*, 408 F.3d at 768.

Here, Cazeau made out a *prima facie* case of discrimination based on national origin with regard to Wells Fargo's failure to promote him to Service

7

Manager.[1]  Therefore, the burden shifted to the bank to articulate a legitimate, non-discriminatory reason for its actions.  *See id.* at 767.  Wells Fargo asserted that it did not promote Cazeau because of its internal policy requiring applicants to have worked at least twelve months in their current position and because another applicant was more qualified than Cazeau.  According to the recruiter who reviewed applications for the position, the candidate who was selected, Renee Urban, had been in her current position for at least twelve months, had worked for Wells Fargo for twelve years, and had previously worked in the banking industry for thirteen years.

We agree with the district court's determination that Cazeau did not present any evidence showing that Wells Fargo's proffered reasons for not promoting him were pretext for discrimination.  Cazeau contended before the district court that he

---

[1]  In his brief, Cazeau references five other job-promotion denials, which occurred from April 2010 to December 2011.  And in his complaint, Cazeau also alleged that the bank failed to promote him to the Service Manager position based on his sex.  The district court, however, found that these claims were not properly before it because Cazeau had not exhausted his administrative remedies by filing EEOC charges relating to them.  *See Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004).  Because Cazeau does not challenge the court's rulings on these points, we consider the issue to be abandoned and therefore address only the Service Manager failure-to-promote claim based on national-origin discrimination.  *See Timson*, 518 F.3d at 874.

We note that, while the denials of the five other positions were distinct adverse actions that could not reasonably be expected to grow out of an investigation into the denial of the Service Manager position, *see Gregory*, 355 F.3d at 1280 ("[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (internal quotation marks omitted)), it is a closer question whether Cazeau's complaint of sex discrimination was inextricably intertwined with his complaint of national-origin discrimination, such that it would not be administratively barred.  But in any case, a claim of discrimination based on sex would also fail because Cazeau has failed to show pretext.

had received permission from Peoples and Williams to apply for the Service Manager position, but there is no evidence to rebut the recruiter's testimony that he had not been contacted by a manager giving Cazeau permission to apply. Cazeau cannot establish pretext merely by showing that the decision-maker was mistaken about the facts underlying the decision. *See Alvarez*, 610 F.3d at 1266 ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."); *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Cazeau also offered no evidence to rebut Wells Fargo's other reason for not hiring him: Urban was more qualified. Accordingly, Wells Fargo was entitled to summary judgment on this claim.

Regarding Cazeau's national-origin and sex discrimination claims based on the back-filling of his position and his subsequent termination, we agree with the district court that, even assuming Cazeau was able to show a *prima facie* case of discrimination based on these actions, Cazeau did not produce any evidence showing that Wells Fargo's proffered explanations were pretextual. *See Vessels*, 408 F.3d at 768. Wells Fargo offered legitimate, non-discriminatory reasons for its decisions. Cazeau's position was filled, according to Wells Fargo, because the

9

Conyers branch was busy and could no longer function with the vacancy.[2]   And Wells Fargo asserted the Cazeau's employment was terminated because he failed to apply for a position before the expiration of his job search leave.  Cazeau did not present any evidence rebutting these reasons.  While Cazeau may feel that Wells Fargo treated him unfairly, "it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive."  *Alvarez*, 610 F.3d at 1266.  Because Cazeau did not create a genuine issue for trial as to whether Wells Fargo's reasons for its actions were pretextual, the district court properly granted summary judgment.

Cazeau maintains that the district court should have analyzed his Title VII claims using a "mixed-motive" framework and that he presented sufficient evidence to show that his national origin was a "motivating factor" in Wells Fargo's adverse decisions.  He cites to the Sixth Circuit's decision in *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008), in which that court held that the *McDonnell Douglas* burden-shifting framework does not apply to Title VII mixed-motive claims.

---

[2]  Although Cazeau did not allege a claim of interference with his rights under the Family and Medical Leave Act, 29 U.S.C. § 2615(a), we note that the evidence indicates that Cazeau's position was filled after he had exhausted his FMLA leave and corresponding job-protection rights, *see* 29 U.S.C. §§ 2612(a)(1) & 2614(a)(1).

10

A mixed-motive case under Title VII is one in which a plaintiff alleges that an employment decision was motivated by both legitimate and discriminatory reasons. *See* 42 U.S.C. § 2000e-2(m). To prevail against an employer in a mixed-motive case, the plaintiff must "demonstrate[] that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.*; *see Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94, 123 S. Ct. 2148, 2151 (2003).

Cazeau's claim would not have survived summary judgment under a mixed-motive framework. Cazeau has not presented evidence to permit a reasonable jury to conclude that his national origin or sex was a motivating factor for the adverse actions. *See* 42 U.S.C. § 2000e-2(m); *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1203 (11th Cir. 2010); *see generally Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775 (1989). Although Williams may have made discriminatory remarks to him, Cazeau has not shown that Williams was involved in the decisions to deny the Service Manager promotion, to hire a replacement for his position, or to terminate his employment.

Accordingly, we affirm the district court's grant of summary judgment on Cazeau's Title VII discrete-action claims.

11

B.    *Hostile Work Environment*

To establish a claim under Title VII for a hostile work environment, an employee must show (1) that he belongs to a protected group;  (2) that he has been subject to unwelcome harassment;  (3) that the harassment was based on a protected characteristic;  (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment;  and (5) that the employer is directly or vicariously responsible for the hostile work environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The requirement that the harassing conduct be severe or pervasive enough to alter the terms or conditions of employment contains both an objective and a subjective component.  *Id.* at 1276.  The behavior "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives . . . to be abusive." *Id.* (brackets and internal quotation marks omitted).

There is little doubt that Cazeau subjectively perceived the environment at the Conyers Wells Fargo branch to be abusive.  He complained to management about bullying and harassment he faced from co-workers, and the evidence indicates that he was reluctant to return to work because of the abuse he faced there.

12

But the district court properly found that Cazeau had not established an objectively hostile work environment. Title VII is not a "general civility code." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81, 118 S. Ct. 998, 1002 (1998). Rather, for harassment to be actionable, it must be "because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000-e(2)(1); *see Miller*, 277 F.3d at 1275. So limited, the only evidence of harassment on the basis of Cazeau's national origin[3] was his testimony that Williams made inappropriate comments regarding his national origin "more than once." While such conduct is improper and is not to be condoned even if it occurred only once, isolated remarks alone are not sufficient to create a severe and pervasive work environment. Based on this record, and without additional evidence of the frequency or severity of the conduct, including whether it interfered with Cazeau's work performance, a reasonable jury could not have concluded that Cazeau suffered severe and pervasive harassment on the basis of his national origin. *See Miller*, 277 F.3d at 1276-77; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84 (1998) (occasional teasing and sporadic use of abusive language are insufficient to be actionable under Title VII).

---

[3] The district court concluded that Cazeau's claim alleging a hostile work environment based on sex was administratively barred, and he does not challenge that ruling on appeal. We therefore consider it to be abandoned. *See Timson*, 518 F.3d at 874.

13

*C.    Retaliation*

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must show the following:  (1) he engaged in a protected activity;  (2) he suffered a materially adverse action;  and (3) a causal connection existed between the protected activity and the adverse action.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).  "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."  *Id.* at 1364.  "But mere temporal proximity, without more, must be very close."  *Id.* (internal quotation marks omitted).

Here, Cazeau has not shown that his first EEOC charge, filed in April 2012, was causally related to the back-filling of his position in August 2012 or his termination in January 2013.  Because no other record evidence shows that these adverse decisions were related to his April 2012 EEOC charge, the delay of four to nine months is too remote, as a matter of law, to show a causal connection.  *See id.* ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").

Cazeau's second EEOC charge, filed in December 2012, may have been close enough to his termination to establish causation with respect to his termination in January 2013.  *See id.*  Therefore, we assume without deciding that Cazeau made out a *prima facie* case of retaliation.  As a legitimate non-retaliatory

14

reason for its termination decision, Wells Fargo asserted that Cazeau was terminated automatically, without input from any of his managers, because he had not found another position with the bank when his job-search leave ended. Cazeau's testimony confirms that he did not apply for a position with the bank during his job-search leave.

Cazeau does not point to any record evidence suggesting that Wells Fargo's reason for terminating his employment was pretext for retaliatory animus. *See Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (stating that once the employer offers a legitimate reason for its employment action, the plaintiff must then show that the proffered explanation is pretext for retaliation). Cazeau alleges that there were two emails in which Peoples stated that he did not think that he could work with Cazeau after all of the discrimination charges and that he wanted to change the locks on the bank's door to prevent Cazeau from returning to work. But the district court was unable to locate these documents in the record, and Cazeau was unable to produce them when given the opportunity to do so. Similarly, they are not in the record on appeal. In any case, we agree with the district court that, because the evidence does not show that Peoples was involved in the decision to terminate Cazeau's employment, the emails would not be additional evidence of causation even if they were in the record. Accordingly, summary judgment was properly granted on Cazeau's retaliation claim.

15

## IV.  Equal Pay Act

"A *prima facie* case of an EPA violation is shown if an employer pays different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995) (ellipsis, brackets, and internal quotation marks omitted); *see* 29 U.S.C. § 206(d)(1).  Once a *prima facie* case is demonstrated, the employer must prove by a preponderance of the evidence that the pay differential is justified by one of the exceptions set forth in the EPA.  *Irby*, 44 F.3d at 954.  The four exceptions are "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  *Id.* (quoting 29 U.S.C. § 206(d)(1)).  If the defendant fails to meet its burden of showing that sex provided no basis for the wage differential, "the court must enter judgment for the plaintiff."  *Id.*  But when the defendant meets its burden under the EPA, "the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential."  *Id.*

Cazeau alleged that he was paid less for his work as a Teller than two other female Tellers, Miranda Chavez and Kathy Hill.  The district court first determined that any EPA claim based on a disparity of wages with Chavez was time barred.

16

Unless the violation is willful, an EPA action must be commenced within two years after the cause of action accrued.  *See* 29 U.S.C. § 255(a); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1164 (11th Cir. 2008) (Fair Labor Standards Act's statute-of-limitations provisions apply to EPA claims).  Cazeau does not challenge the district court's time-bar determination, and has, therefore, abandoned any argument on that point.  *See Timson*, 518 F.3d at 874.  In any event, as the district court found, the evidence established that Chavez stopped working as a Teller in October 2010, but Cazeau did not file his lawsuit until January 2013, by which time the two-year limitation period had expired.[4]  *See* 29 U.S.C. § 255(a).

Regarding Hill, Wells Fargo produced evidence showing that she had significantly more experience than Cazeau, and experience is a "factor other than sex."  *Irby*, 44 F.3d at 955-56.  Specifically, Hill had worked at Wells Fargo since 1999, whereas Cazeau started in 2004.  Cazeau did not offer any evidence to suggest that this reason was pretextual or "offered as a post-event justification for a gender-based differential."  *See id.* at 954.  Consequently, the district court properly granted summary judgment to Wells Fargo on Cazeau's EPA claims.[5]

---

[4]  There is no evidence to support a "willful violation."  *See* 29 U.S.C. § 255(a).

[5]  In a response brief to Wells Fargo's summary-judgment motion, Cazeau also alleged that he had been denied annual raises, among other things.  The district court found that any claims based on these denials were not properly before it because they were not raised in the complaint.  Cazeau does not challenge this ruling on appeal, so we consider the issue abandoned.

17

## V.  Americans with Disabilities Act

The ADA prohibits employers from discriminating against "qualified individual[s] on the basis of disability."  42 U.S.C. § 12112(a).  Generally, to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that (1) he is disabled; (2) he was a qualified individual at the relevant time, meaning he could perform the essential functions of the job with or without reasonable accommodations; and (3) he was discriminated against because of his disability.  *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003); *see* 42 U.S.C. § 12111(8) (defining "qualified individual").  The term "disability" means a physical or mental impairment that substantially limits at least one major life activity of such individual, or being regarded as having such an impairment.  42 U.S.C. § 12102(1).

It is unlawful for an employer to fail to provide "reasonable accommodations" for a qualified individual's disability, unless doing so would impose undue hardship on the employer.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  The employee bears the burden of identifying an accommodation that would allow her to perform the essential functions of her job. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).  An employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand

18

for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

The district court found that no evidence that Cazeau had, or was regarded as having, a mental or physical impairment that substantially limited one or more major life activities. *See* 42 U.S.C. § 12102(1). In other words, Cazeau was not "disabled" under the ADA. While he asserts that he was perceived as disabled because Wells Fargo placed him on temporary medical leave (or short term disability leave), he does not assert, and the evidence does not show, that Wells Fargo ever regarded him as substantially limited in any major life activity.

Assuming, though, that Cazeau was disabled or was perceived as disabled by Wells Fargo, there is no genuine issue for trial based on Wells Fargo's failure to provide an accommodation. The accommodation that Cazeau identifies was placement in an open position after he returned from medical leave. However, as the district court found, Cazeau never requested a specific accommodation. Cazeau told Wells Fargo generally that he wished to return to work, and Wells Fargo provided Cazeau with resources and information to apply for available positions. Cazeau, however, never followed up with Wells Fargo or applied for a specific, open position after he was cleared to return to work by his doctor. Because no specific demand for an accommodation was made, Wells Fargo had no

19

duty to provide a reasonable accommodation under the ADA.  *See Gaston*, 167 F.3d at 1363; *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997).

To the extent that an accommodation was requested, Wells Fargo took reasonable steps to offer information about available positions, and any breakdown in the process of identifying an accommodation is attributable to Cazeau.  *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (holding that an employer is not liable where it takes reasonable steps to provide an accommodation and the employee is responsible for a breakdown in the process of identifying a reasonable accommodation).  In short, the district court properly granted Wells Fargo's summary judgment motion on Cazeau's ADA claim.

## VI. Conclusion

In short, the district court did not err in granting summary judgment to Wells Fargo on all of Cazeau's claims.  Cazeau has failed to show that any challenged employment action was because of his national origin, gender, or perceived disability, or in retaliation for complaining about such alleged discrimination.  *See Alvarez*, 610 F.3d at 1266.

**AFFIRMED.**[6]

---

[6] All other issues not explicitly addressed are without merit.

20