**PUBLISH**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

No. 98-6637
Non-Argument Calendar
_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/12/99
THOMAS K. KAHN
CLERK

D.C. Docket No. 93-1039-BH-C

JAN C. GASTON,

Plaintiff-Appellant,

versus

BELLINGRATH GARDENS &
HOME, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Alabama

_____

(February 12, 1999)

Before COX, DUBINA, and CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Jan Gaston appeals from the district court's grant of summary judgment to defendant Bellingrath Gardens & Homes ("Bellingrath Gardens"), her former employer, on her claim that it discriminated against her on the basis of her disability in violation of the American with Disabilities Act, 42 U.S.C. 12101 et seq. For the reasons set forth below, we affirm the district court's judgment.

## I. BACKGROUND

Jan Gaston began working for Bellingrath Gardens in 1983, initially in the garden area and later in the gift shop as a cashier. She had several surgeries between 1988 and 1992 due to an osteoarthritic condition but was always able to return to her cashier job afterwards. Up until December 1992, the guidelines describing her gift shop cashier position did not require her to carry a weight in excess of ten pounds or to engage in any bending, lifting, or stooping.

In December 1992, Bellingrath Gardens came under new management. On December 4, 1992, Ms. Marty Wyas, the new general manager of Bellingrath Gardens, called Gaston into her office and showed her the new job guidelines for a gift shop cashier. Those new guidelines required a gift shop cashier to be able to lift and carry a weight of up to fifty pounds and specified

2

that bending, lifting, and stooping were part of the job. Wyas told her that she must meet those requirements in the guidelines or "else." Gaston then told Wyas that she (Wyas) knew Gaston could not meet those requirements. Wyas, however, did not take any action against Gaston at that time.

On December 30, 1992, Gaston resigned her position, allegedly because she could not meet the requirements in the new guidelines. Gaston does not point to any evidence indicating that she informed Bellingrath Gardens of the reason for her resignation.

On December 28, 1993, Gaston filed a complaint alleging that Bellingrath Gardens had discriminated against her by failing to provide a reasonable accommodation for her disability. The suit was subsequently continued, however, to allow Gaston to pursue a claim for disability benefits from the Social Security Administration. On June 5, 1996, an Administrative Law Judge found that Gaston was disabled within the meaning of the Social Security Act and awarded her disability benefits. Shortly thereafter, the district court lifted the continuance on Gaston's ADA suit and Bellingrath Gardens moved for summary judgment.

The district court granted Bellingrath Gardens summary judgment on the

grounds that Gaston could not establish that she was a "qualified individual with a disability" under the ADA, that is, an individual who can perform the essential functions of the job either with or without reasonable accommodation. See 42 U.S.C. § 12111. The district court reasoned that Gaston's representation to the Social Security Administration that she was "permanently disabled" and the ALJ's finding, in awarding Gaston disability benefits, that "she could not engage in even sedentary work," estopped her from maintaining in the present suit that she could perform her former job as gift shop cashier either with or without a reasonable accommodation.

Gaston appealed and we vacated the judgment and remanded the case to allow the district court to consider our decision in Talavera v. School Bd. of Palm Beach County, 129 F.3d 1214 (11th Cir. 1997), which had been decided subsequent to the district court's entry of judgment. In Talavera, we held that an ADA plaintiff who the Social Security Administration has certified as "totally disab[led]" is not judicially estopped from claiming she is able to do her job with reasonable accommodation for purposes of establishing that she is a "qualified individual with a disability" under the ADA. Id. at 1220. We also held, however, that an ADA plaintiff was "estopped from denying the truth of

4

any statements made in her disability application [to the Social Security Administration]." Id.

On remand, the district court again awarded Bellingrath Gardens summary judgment after finding that its previous order granting summary judgment was consistent with Talavera. Gaston then filed this appeal.

## II.  DISCUSSION

"We review a district court's grant of summary judgment de novo, applying the same legal standard employed by the district court. . . . Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998)(citations and quotations omitted).

We find it unnecessary to address the issue of whether Gaston is estopped from claiming that she could have performed her job with a reasonable accommodation, because we conclude that her claim that Bellingrath Gardens discriminated against her by failing to provide a reasonable accommodation fails

for a more basic reason–she never requested a reasonable accommodation.[1]

We have previously held that a plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation. See Wood v. President and Trustees of Spring Hill College in the City of Mobile, 978 F.2d 1214, 1222 (11th Cir. 1992). "Congress intended for courts to rely on Rehabilitation Act cases when interpreting similar language in the ADA." Pritchard v. Southern Co. Services, 92 F.2d 1130, 1132 n.2 (11th Cir. 1996). Like the ADA, the Rehabilitation Act imposes a duty on entities covered by the act to provide employees with a disability a reasonable accommodation. See Harris v. Thigpen, 941 F.2d 1495, 1525 (11th Cir. 1991). Accordingly, our holding in Wood that the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made, is binding precedent for purposes of defining the scope of the

---

[1] Bellingrath Gardens raised this argument both before the district court and on appeal, but Gaston, for whatever reason, chose not to respond to it. While we recognize that the district court did not address this argument, we may affirm the district court's judgment "on any ground that finds support in the record." See Jaffe v. Dunham, 77 S. Ct. 307, 308 (1957).

6

duty to provide a reasonable accommodation under the ADA.[2]

Moreover, the EEOC's interpretive guidelines, issued pursuant to its authority to issue regulations under the ADA, provide that "[i]n general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630 App. § 1630.9. "Once a qualified individual with a disability has requested provision of reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation." Id.

Thus, both our precedent and the EEOC's interpretive guidelines clearly provide that the initial burden of requesting an accommodation is on the employee. Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her.

In this case, Gaston did not request a reasonable accommodation after Ms. Wyas, her manager, informed her about the new job requirements of a gift shop

---

[2]Although Wood did not involve employment discrimination but instead involved alleged discrimination in a college admissions decisions, this distinction is irrelevant. The Rehabilitation Act's prohibition against discriminating against an individual with a disability "unquestionabl[y]" applies to employment decisions. Consolidated Rail Corp. v. Darrone, 104 S. Ct.1238, 1253 (1984).

cashier. Instead, she simply told Ms. Wyas that she knew Gaston could not meet those requirements and then resigned without explanation approximately three weeks later. Gaston's failure to demand a reasonable accommodation after being shown the new job requirements is fatal to her ability to prevail on her claim that Bellingrath Gardens discriminated against her by failing to provide a reasonable accommodation.[3]

## III. CONCLUSION

AFFIRMED.

---

[3]We note that a different case might be presented if Gaston could show that the new job requirements were implemented for the purpose of discriminating against her because of her disability. However, Gaston presented no such evidence.