[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15036
Non-Argument Calendar

_____

D. C. Docket No. 06-00158-CV-RWS-2

TIMOTHY RYLEE,

Plaintiff-Appellant,

versus

SHERIFF CHARLES CHAPMAN, in his official
capacity as Sheriff of Banks County,
BANKS COUNTY, a municipal subdivision
of the State of Georgia,
JOSEPH CHAPMAN,
C. WAY,
B. LORD,
JOHN DOE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 27, 2009)

Before BLACK, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Timothy Rylee ("Rylee"), an individual with a hearing impairment, alleges that his rights were violated by Defendant-Appellees Charles Chapman, Joseph Chapman, Cary Way, Brian Lord, John Doe, and Banks County, Georgia (collectively "Appellees"), throughout the course of his arrest, booking, interrogation, and first appearance hearing. Rylee brought claims against Appellees under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq., the Rehabilitation Act ("RA"), 19 U.S.C. § 794, and 42 U.S.C. § 1983. Following discovery, the district court granted summary judgment in favor of the defendants on all claims.

## I. Facts

On the evening of November 1, 2005, twelve-year-old Kevin Rylee called Banks County 911 and told the operator that he needed assistance because his father, Timothy Rylee, "would not leave [his] mom alone." Rylee's then-wife, Susan Rylee, got on the line and told the 911 operator that she needed officers to come to her residence because her husband had, amongst other things, threatened to kill her, grabbed her around her throat, threw her against a wall, threw glass jars full of fruit at her, and threw a chair at her as she fled down the stairs. At the time

2

of the call, Mrs. Rylee reported that she and her two children were outside the house, hiding from Rylee amongst some trees. She told the 911 operator that her husband was hearing-impaired and did not know sign language, but could read lips and understand someone when they spoke slowly to him.

Appellees Cary Way and Brian Lord, both patrol deputies with the Banks County Sheriff's Office, were dispatched to Rylee's residence. While they were en route, the 911 dispatcher told the deputies that Rylee was hearing impaired, but could read lips. When the deputies arrived, they did not see anyone in the front yard and began to approach the house. The front door was open and Rylee's dog was outside. The dog approached the deputies, the deputies pointed their pistols at the dog, and Rylee came outside yelling, "don't shoot the dog." Once Rylee was on the front lawn, the deputies proceeded to question him, including whether he knew the location of his wife and children. At no point did Rylee ask for an interpreter or for any other accommodations in order to help him communicate with or understand the deputies.

During or after this exchange, Mrs. Rylee and her two sons emerged from the woods. Deputy Lord escorted Mrs. Rylee into her residence, where he and Sergeant Jimmy Hubbard,[1] who had recently arrived on the scene, questioned Mrs.

---

[1] Sergeant Hubbard was originally a defendant in this case; however, following his death, the district court granted Rylee's motion to dismiss the claims against Sergeant Hubbard.

Rylee. Mrs. Rylee gave a statement reciting allegations of violence that were similar to those that she told the 911 operator. She also told the officers that Rylee previously had thrown a carton of ice cream at her and showed the officers the bruise that allegedly resulted from that incident. Inside the house, Sergeant Hubbard noticed that a chair was overturned, consistent with Mrs. Rylee's story that her husband threw a chair at her.

Sergeant Hubbard ordered Rylee arrested. He was taken into custody on charges of simple battery, simple assault, and second degree cruelty to children. Deputy Lord drove Rylee to the Banks County Jail, turned him over to the booking officer, and informed the booking officer that Rylee had a hearing impairment. Jail documents bear the notation that Rylee is "deaf, but can read lips."

During the booking process, Rylee asked one booking officer to hand-write her questions and statements to him. She complied with this request. Rylee also asked a jail officer if he could use his cellular telephone so that he could contact his family, but the officer confiscated the phone, along with Rylee's other personal property.[2] Later that evening, however, a jail officer contacted one of Rylee's relatives to let them know his whereabouts. After booking, Rylee spent the night

---

[2] Although Rylee's complaint and brief are vague, we assume that the "John Doe" against whom suit was brought is the officer that confiscated Rylee's phone. This officer appears, based on the facts alleged by Rylee, to be the only unnamed individual against whom there is at least an arguable cause of action.

in jail.  While incarcerated, Rylee acknowledged in writing that he received the Banks County Jail's Inmate Handbook, which specified the jail's grievance procedures.

On the morning following the arrest, Appellee Joseph Chapman, an investigator for the Banks County Sheriff's Office, met with Rylee to interview him.  Before the start of the interview, Rylee acknowledged in writing that he had received Miranda[3] warnings.  Investigator Chapman asked Rylee whether he could read lips, to which he responded "yes," and noted that he could also read and write.  During the interview, Investigator Chapman wrote down his communications for Rylee.  At no point did Rylee ask for an interpreter.  At Rylee's request, Investigator Chapman wrote a statement based on his account, which Rylee signed.  The statement alleged that Rylee defended himself after his wife came at him with a knife.

Investigator Chapman thereafter obtained a warrant charging Rylee with simple battery and second degree cruelty to children, and transported Rylee to a bond hearing before a magistrate judge.  Rylee was met at court by his uncle, a retired attorney.  The magistrate judge, having found probable cause for the charges, spoke with Rylee's uncle in chambers and reached a bond agreement.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Bail was set, the bond was posted, and Rylee was released.

Rylee thereafter brought the instant suit against Appellees. Following discovery, both parties moved for summary judgment. The district court denied Rylee's motion for summary judgment and granted summary judgment in favor of Appellees on the following grounds: (1) Sheriff Chapman is entitled to official immunity from all claims; (2) the RA claims fail because Rylee did not identify any federal funding;[4] (3) the ADA claims fail because Rylee did not demonstrate a prima facie case of disability discrimination, individual defendants cannot be sued under the ADA, and Banks County did not deny Rylee reasonable accommodations; and (4) the § 1983 claims fail because Rylee did not show that his due process or equal protection rights were violated.

## II. Discussion

A. Standard of Review

We review a district court's grant of summary judgment de novo. Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002). Summary judgment is proper when the evidence shows there is no genuine issue as to any material fact and the moving

---

[4] Rylee's brief does not address this issue or identify any pertinent federal funding. As such, Rylee has waived his ability to challenge summary judgment on his RA claims. See United States v. Nealy, 232 F.3d 825, 830-31 (11th Cir. 2000) (an argument not raised in an appellant's brief is deemed waived).

party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). We view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Battle v. Bd. of Regents for Ga., 468 F.3d 755, 759 (11th Cir. 2006).

B. Sheriff Chapman's official immunity

Rylee argues that the district court erred in dismissing his ADA and § 1983 claims against Sheriff Chapman on the basis of official immunity. The Eleventh Amendment to the United States Constitution bars suit in federal court against an "arm of the state," except where such immunity is waived by the state or abrogated by Congress. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Georgia law recognizes its sheriffs as "arms of the state." Powell v. Barrett, 496 F.3d 1288, 1304 (11th Cir. 2007). Rylee's brief makes conclusory allegations that Sheriff Chapman is not entitled to immunity, but fails to provide any arguments as to waiver or abrogation. He has therefore waived his opportunity to contest this issue. See Flanigan's Enters. Inc. Of Ga. v. Fulton County, Ga., 242 F.3d 976, 978 n.16 (11th Cir. 2001) (a party waives an issue where, although the issue was mentioned in passing, the party did not elaborate or provide any citation of authority in support of the issue). For this reason, we conclude that the district court did not err in granting summary judgment in favor of Sheriff Chapman on the

7

ADA and § 1983 claims, based on official immunity.

C. ADA claims

### a. Individual Appellees

Rylee argues that the district court erred in finding that individuals may not be sued under the ADA. We disagree. The ADA prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of his disability. 42 U.S.C. § 12131. By its terms, the ADA only addresses discrimination by a "public entity." In the employment context, this court has held that "the Disabilities Act does not provide for individual liability, only for employer liability." Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 2007). Rylee has provided no reasons why this rule should be any different in the context of an arrest. The ADA imposes respondeat superior liability on the employer for the discriminatory acts of its employees. See id. at 1010. We therefore conclude that the district court did not err in granting summary judgment in favor of the individually named Appellees.

### b. Banks County

Rylee's ADA claim against Banks County involves allegations of discrimination by Banks County's employees throughout various portions of Rylee's arrest, booking, and first appearance. In substance, Rylee argues that the

officers intentionally discriminated against him and denied him reasonable

accommodations that he needed in order to effectively communicate with the

officers and magistrate judge.[5]

> To establish a prima facie case under the ADA, the plaintiff must show:
>
> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007). A plaintiff

can proceed on theories of intentional discrimination, disparate treatment, or failure

to make reasonable accommodations. Schwarz v. City of Treasure Island, 544

F.3d 1201, 1212 n.6 (11th Cir. 2008). In cases alleging a failure to make

reasonable accommodations, the defendant's duty to provide a reasonable

accommodation is not triggered until the plaintiff makes a "specific demand" for

an accommodation. Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361,

1363 (11th Cir. 1999).

> Rylee acknowledges that his wife told the 911 operator that Rylee had a

---

[5] Although Rylee's brief states that he should have received a sign language interpreter, he admits that he does not know sign language. He and his family developed some signs in order to aid communication, but there is no reason to believe that a professional interpreter would have known these signals. As such, Rylee does not show he would have benefitted from the services of a interpreter.

hearing impairment, but could read lips. This information was relayed to Deputies Way and Lord, who spoke with Rylee on his lawn. Rylee has presented no evidence from which one could infer that the deputies knew or believed that Rylee could not read lips or that Rylee requested an interpreter or the aid of a family member. Once at the police station, Rylee only once asked an officer to write down her questions for him, and that officer complied with Rylee's request. During Investigator Chapman's meeting with Rylee, not only did Rylee answer "yes" when asked if he could read lips, but he affirmatively told Investigator Chapman that he could read and write. Investigator Chapman wrote his questions to Rylee and, at Rylee's request, drafted his statement of the events that transpired at his home the night before. At his first appearance hearing the next morning, Rylee did not request an interpreter. In fact, on appeal Rylee acknowledges that he did not need one because he "furnished his own" by having his uncle present at the hearing.

The only instance of even arguable discrimination was when, during the booking process, an unnamed officer denied Rylee's request to use his cellular telephone and confiscated the telephone. Rylee, however, produced no evidence to refute Appellees' claims that this was typical booking procedure. Moreover, despite receiving the jail's grievance procedures, Rylee did not take advantage of

these procedures during his incarceration. Absent contrary evidence, the district court was correct to conclude that the simple confiscation of a cellular telephone during a brief twenty-four hour detention was insufficient to establish a prima facie case of disability discrimination.

Because Rylee did not present any evidence of intentional discrimination, denial of services on account of his disability, or refusal to make requested reasonable accommodations, we conclude that summary judgment was properly granted as to Rylee's ADA claim against Banks County.

D. Section 1983 claims against all remaining Appellees

Section 1983 permits a plaintiff to obtain civil damages from any person who deprives him of constitutional rights, so long as that person is acting under color of state law. 42 U.S.C. § 1983. Rylee argues that the district court erred in granting summary judgment on his § 1983 claims, which are premised on the officers' alleged violations of his Fourteenth Amendment equal protection and due process rights.[6]

---

[6] Rylee also argues that he is entitled to relief under § 1983 for claims regarding violations of his Fourth and Eighth Amendment rights. Rylee only mentions his Eighth Amendment claim in passing in his brief and fails to make any argument as to the substance of this claim. This claim is therefore abandoned. See Love v. Deal, 5 F.3d 1406, 1407 n.1 (11th Cir. 1993) (an issue raised, but not argued, is deemed abandoned). Moreover, neither the Fourth nor Eighth Amendment claims were raised in Rylee's complaint before the district court. Thus, these issues may not be considered on appeal. See Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 806 (11th Cir. 1991).

11

*a. Equal protection*

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1313 (11th Cir. 2006). "Unless the challenged classification burdens a fundamental right or targets a suspect class, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest." Lofton v. Sec'y of Dep't of Children and Family Servs., 377 F.3d 1275, 1277 (11th Cir. 2004). The Supreme Court has held that the disabled are not a suspect class, and thus a government's differential treatment of them is only entitled to rational basis review. Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 446 (1985). Under rational basis review, there is no equal protection violation so long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Heller v. Doe, 509 U.S. 312, 320 (1993).

In the present case, Rylee has failed to establish any differential treatment. Instead, he proposes that he should receive preferential governmental treatment. For example, he argues that: (1) because of his hearing-impairment, the arresting deputies should have let him spend the night at a relative's home and surrender himself in the morning; and (2) he should have been permitted to use his cellular telephone, even though he has not established that this privilege is available to

12

individuals without hearing impairments. Because Rylee fails to establish a disparity of treatment, his equal protection claim therefore fails.[7]

   *b. Due process*

   Rylee finally argues that his substantive due process rights were violated "[t]hrough a warrantless arrest, incarceration that effective[ly] isolated him from the world, and interrogation without [the] benefit of counsel or an interpreter."

   "Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." Davis v. Carter, __ F.3d __, 2009 WL 152707, at *2 (11th Cir. Jan. 23, 2009). The Supreme Court has noted that this is a steep standard, wherein "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).

   We find Rylee's arguments to be without merit. Although he was arrested without a warrant, the statements of Mrs. Rylee and her children gave the officers probable cause to believe that Rylee committed the crimes for which he was

---

[7] The district court based summary judgment on the fact that Banks County had a rational basis for treating Rylee differently than other detainees. We need not reach this issue because we conclude that Rylee was not subjected to any differential treatment. See Koziara v. City of Casselberry, 392 F.3d 1302, 1306 n.2 (11th Cir. 2004) (this court may affirm on any grounds supported by the record).

13

arrested. See Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir. 2006) ("Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'") (citation omitted). Rylee did not invoke his right to counsel or request an interpreter and he has presented no evidence creating a genuine issue of material fact as to whether any of Appellees engaged in behavior that is so egregious that it "shocks the conscience." As such, we find that summary judgment was properly granted on his § 1983 due process claims.

E. Conclusion

For the reasons stated, we conclude that the district court did not err in granting summary judgment in favor of Appellees on all claims.

**AFFIRMED.**