[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10799

_____

PAMELA WILSON,

Plaintiff-Appellant,

*versus*

SECRETARY OF VETERANS AFFAIRS
DEPARTMENT OF VETERANS
AFFAIRS,
Atlanta Regional Benefits Office,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cv-02110-JPB

_____

Before WILSON, LAGOA, Circuit Judges, and MARTINEZ,* District Judge.

PER CURIAM:

Plaintiff-Appellant Pamela Wilson, a veteran suffering from certain health limitations, appeals the district court's order of summary judgment against her claims of discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the Rehabilitation Act), and in favor of her former employer, the Department of Veterans Affairs, and its Secretary, Dr. David J. Shulkin (collectively, the VA).

Wilson presents two issues on appeal. First, Wilson argues that the district court erred in finding that she thwarted the interactive process and therefore failed to demonstrate that the VA discriminated against her. Second, Wilson argues that the district court erred in finding that she failed to set out a prima facie case of retaliation because her unauthorized parking was not statutorily

_____

* Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

protected activity. After careful review, and with the benefit of oral argument, we conclude that there are genuine factual disputes concerning whether the VA engaged in the interactive process in good faith and thus failed to accommodate Wilson's requests for accommodations. However, we agree with the district court that Wilson failed to set out a prima facie claim of retaliation. Accordingly, we reverse in part and affirm in part.

I.

This case concerns Wilson's claim that the VA failed to accommodate her by ignoring her repeated requests for a parking accommodation due to her disability. Wilson, a veteran, suffers from degenerative disc disease and partial paralysis in both feet. In February 2009, Wilson started as a probationary Veteran Claims Examiner (VCE) for the Atlanta VA Regional Office. At the time, the Atlanta VA Regional Office only permitted permanent employees to use the on-site parking deck. Probationary VCEs could park at an off-site parking area roughly one mile from the office, from which they could either take a shuttle or walk to work. The VA shuttle ran for one hour in the morning and one hour in the evening. It ran sporadically at best and could only hold up to 25 individuals at a time—even then, there were only 15 seats. And because the shuttle lacked handlebars, standing passengers were forced to either be "pressed against an individual" or "use [their] body as a stance" to avoid falling over. Roughly 80 probationary VCEs commuted per day. Because of the shuttle's shortcomings, Wilson effectively faced the option of either walking to work—

which "put enormous pressure on her nerves" and caused her legs and feet to swell—or parking in unassigned handicapped spaces in the on-site parking deck.[1]  Wilson made the latter choice, leading to numerous parking tickets and counseling memos about her unauthorized parking.

As an employee with a disability, Wilson was told to bring any requests she may have for workplace accommodations to Celesta Chapin, her Vocational Rehabilitation Counselor with the VA's Rehabilitation and Employment Division.  Between March and July 2009, Wilson communicated her needs for a parking accommodation on six occasions to VA personnel—in all instances, Wilson stated that the VA refused to accommodate her requests in violation of the Rehabilitation Act.

Wilson identified six distinct failures by the VA to accommodate or respond to her requests for an accommodation, occurring on the following dates in 2009: (1) March 31, (2) April 13, (3) April 17,[2] (4) May 12, (5) July 7, and (6) July 8 and thereafter.  The record evidence shows the following regarding these events.

Wilson described the first instance in a sworn statement.  On March 31, 2009, Wilson emailed Chapin to inform her that the parking situation at the VA aggravated her disability and that she

---

[1] Wilson confirmed at oral argument that she had a Georgia handicapped parking placard on her vehicle at the time.

[2] The April 17 allegation appears to be a mistaken reference to an email, attached as an exhibit that was actually dated April 21, 2009.

needed a parking accommodation.  Chapin informed Wilson that she would make a workplace accommodation request to Human Resources (HR) on her behalf.  Wilson never received follow-up from this meeting.

With regard to the second occasion, occurring on April 13, 2009, Wilson stated that she met with Eboni White, her direct supervisor, after receiving a counseling memo for unauthorized parking in the on-site parking deck.  During the meeting, Wilson explained that her disability forced her to park on-site and that she was working with Chapin to obtain permission to park in the on-site parking deck, for which she needed White's assistance.  White then said that she would communicate with Chapin.  However, White did not relay Wilson's request to Chapin or anyone in HR, nor did White follow up with Wilson regarding her request.

Wilson's affidavit states that the third occasion occurred on April 21, 2009.  Wilson stated that she emailed Praileau Young, an HR assistant, to ask where she could find the paperwork necessary to submit a parking accommodation request.  Young responded that she had forwarded Wilson's email to the "appropriate person," but Wilson never received the requested information.  On the same day, Wilson emailed Chapin again to confirm the status of her request.  Chapin responded that she thought Wilson dropped the matter, but then requested from Wilson the name of her supervisor so that Chapin could request an assessment.  Wilson responded and asked Chapin to submit the request on her behalf.

In the same affidavit, concerning the fourth instance, Wilson stated that she met again with Chapin on May 12, 2009. At this meeting, Chapin reminded her to discuss her request with her supervisor. Wilson testified that she believed management was ignoring her since she had already spoken with White to no avail.

On July 1, 2009, union representative Rebecca Manning gave her own parking badge to Wilson with permission to use it to park at the on-site parking deck. Because the badge did not work, Wilson asked an HR Liaison, Vivian DeLoach, for help. On July 7, 2009, DeLoach informed Wilson that she was not authorized to park there. Making this the fifth occasion, Wilson testified that she believed then that her request had been denied after all.

Regarding the last occasion, Wilson testified that she emailed DeLoach on July 8, 2009, to request "the appropriate paperwork to file for reasonable parking accommodations due to my service-connected disability," which she identified as "degenerative disc disease, with [herniated] discs and partial paralysis in both of [her] feet." Wilson stated that she would be willing to provide medical documentation and facilitate contact with her doctor if necessary. On July 16, 2009, Unit Chief John Clayton Smith—who replaced White as Wilson's direct supervisor—followed-up to verbally inform Wilson that he consulted with HR and that they "d[id] not see a connection [between parking privileges] and the essential function of you performing your job." Wilson interpreted this as the sixth instance of the VA's failure to accommodate. Wilson then emailed DeLoach for written confirmation of Smith's "denial" of

her request for accommodations. Smith followed up with Wilson via email and reiterated that neither he nor HR saw the need for an accommodation but did not deny the request outright. DeLoach responded that although she was not the approving official for accommodation requests, she would assist Smith in helping Wilson understand how to properly submit a request.

On July 22, 2009, Wilson filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discrimination by the VA. Within hours of filing the complaint, Wilson received a letter from Smith titled "Certification of Need for a Reasonable Accommodation." Smith therein acknowledged Wilson's accommodation request and requested, *inter alia*, medical documentation to evaluate her request. The letter also reminded Wilson yet again that "parking is not a condition of employment, nor related to the essential functions of your position." This was the same language that Smith used in previously denying her request. Wilson testified that she never provided the documentation because she understood the letter to be a preemptive denial. Wilson did not receive any follow-up.

Wilson testified that she soon thereafter suffered harassment. This harassment consisted, in part, of what she considered a pretextual disciplinary reprimand for leaving overtime work 45 minutes early because she felt ill. Wilson also applied for a Rating Veteran's Service Representative position (RVSR) around this time but was not selected despite her allegation that she was more qualified than the selected applicant. On September 3, 2009, Wilson

withdrew her EEOC complaint on advisement from her EEOC counselor. Her EEOC counselor discussed the matter with De-Loach, who responded, "if [parking] was going to be a problem [Wilson] might want to reevaluate her decision to work there." Wilson stated that she continued to park in on-site handicapped spaces and amassed several parking tickets and letters of counseling because she believed that the VA unlawfully denied her accommodations request. Wilson also received a negative performance appraisal during this time, to which she filed a union grievance. Shortly thereafter, Jeannie Daniel, the VA Regional Assistant Education Officer, recommended to the VA regional Director Alfred Bocchicchio that Wilson be terminated for poor performance. The VA terminated Wilson on December 18, 2009, with a letter citing both her parking violations and poor performance as justification.

Wilson applied again for the RVSR position in 2011, and was again not selected, despite her allegation that here, too, she was the most qualified candidate. Wilson stated that she believed she was not selected on either occasion because the decisionmakers knew of her disability and her EEOC complaint.

In 2017, Wilson sued the VA for violating the Rehabilitation Act by (1) unlawfully discriminating against her, a disabled individual, as to the terms and conditions of her employment, and (2) retaliating after she made protected complaints about such discrimination. The district court granted summary judgment in favor of the VA. On Wilson's first claim, the district court found that Wilson failed to show a genuine issue of material fact concerning

whether the VA had denied her request for reasonable accommodations. The district court also found that Wilson thwarted the interactive process that the VA eventually entered with her by refusing to provide the medical documentation that the VA requested to assess her request. On Wilson's second claim, the district court found that Wilson failed to establish a prima facie retaliation case because her unauthorized parking was not protected activity. Further, the district court found that Wilson could not show that her termination was pretextual. Wilson timely appealed.

## II.

We review an entry of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Collar v. Abalux, Inc.*, 895 F.3d 1278, 1281 (11th Cir. 2018). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists unless a reasonable jury could return a verdict in favor of the non-moving party. *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013).

## III.

The first issue that Wilson raises on appeal is whether the district court erred in awarding summary judgment to the VA on her discrimination claim. Because we find that Wilson raises a genuine issue of material fact concerning whether the VA failed to provide a reasonable accommodation, we reverse.

In making its determination on this claim, the district court found that Wilson's accommodations requests prior to July 8, 2009, were not specific enough to trigger the VA's obligation to provide an accommodation or to engage in the interactive process.  It further held that because Wilson failed to provide the medical documentation that the VA requested, she thereby thwarted the interactive process and was thus barred from recovery on her failure-to-accommodate claim.  Wilson argues that the district court erred on both points.  We agree.

The Rehabilitation Act prohibits federal agencies from discriminating against employees based on their disability.  *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999).  "Discrimination claims under the ADA and the Rehabilitation Act are governed by the same standards, and the two claims are generally discussed together."  *J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (per curiam).  As such, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa."  *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000).

Under the Rehabilitation Act, a disabled, otherwise qualified, individual may establish a prima facie case of discrimination by showing that the employer failed to provide a reasonable accommodation, unless doing so would impose an undue hardship on the employer.  *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017).  To trigger the employer's duty to provide a reasonable accommodation, the plaintiff must make a specific demand

for such an accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam). The plaintiff also must meet the burden of "establishing that the particular accommodation is reasonable." *Willis v. Conopco, Inc.*, 108 F.3d 282, 284–85 (11th Cir. 1997) (per curiam).

After the employer is placed on notice of the employee's disability and request for an accommodation, it is obligated to "make a reasonable effort to determine the appropriate accommodation." *Gaston*, 167 F.3d at 1364 (internal quotation mark omitted). In "determin[ing] the appropriate reasonable accommodation[,] it may be necessary for the covered entity to initiate an informal, *interactive process* with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3) (emphasis added). Only when the employer fails to provide the accommodation after it was demanded can the plaintiff sustain a discrimination claim under the Rehabilitation Act. *See Gaston*, 167 F.3d at 1363–64.

On appeal, Wilson argues that the VA failed to accommodate her disability because it spent nearly four months "ignoring or outright denying" her requests for a reasonable accommodation until it finally initiated the interactive process on July 22, 2009. Therefore, she argues that the district court erred in finding that she thwarted the interactive process by failing to provide the requested medical documentation.

The VA responds that Wilson neither made a specific request for a reasonable accommodation before July 8, 2009, nor engaged with the interactive process in good faith. Further, the only

proper request for an accommodation, per the VA's employee handbook, was Wilson's email on July 8, 2009. The VA contends that Wilson caused the breakdown of the interactive process by failing to respond to the VA's request for medical documentation to better evaluate Wilson's accommodation request.

The VA does not dispute that Wilson is a qualified individual with a disability. We thus focus our analysis here on whether Wilson has demonstrated that there are triable issues of fact that she (1) made a specific demand for a reasonable accommodation, and (2) did not cause the breakdown of the interactive process. We find that she does. We now discuss each point in turn.

## A.

As discussed above, to trigger an employer's obligation to provide a reasonable accommodation, the employee must make a specific demand for one, *Gaston*, 167 F.3d at 1363, and demonstrate that the requested accommodation is reasonable, *Willis*, 108 F.3d at 284–85. Viewing the evidence in the light most favorable to Wilson, she creates a triable issue over whether she made a reasonable and specific demand for an accommodation.

Starting on March 31, 2009, Wilson made repeated requests for one specific accommodation: the ability to park in the VA parking deck. Wilson repeatedly explained her reasoning and her request to a growing cast of VA personnel who either discouraged, ignored, or provided inadequate follow-up to her requests.

The VA argues that none of Wilson's five alleged requests before her July 8, 2009 email to DeLoach adequately followed the VA's procedures, identified Wilson as the requestor, or linked Wilson's request to her disability. But according to the VA's reasonable accommodation policy, a request for a reasonable accommodation may be made orally or in writing to an employee's immediate supervisor or HR. Further, it states: "[a] health care professional, or other representative may request an accommodation on behalf of a VA employee . . . [which] may be submitted to the appropriate Human Resources Officer designated to receive such requests." Here, we exhibit the error of the VA's position with respect to even the first two alleged instances of discrimination.

The first instance of discrimination occurred on March 31, 2009, when Wilson made her initial request to Chapin, to whom she had been advised to bring any need for workplace accommodation. Wilson stated in her declaration that she "informed Ms. Chapin that the parking condition at the VA was further aggravating [her] disability and [she] needed parking accommodation." In response, "Chapin told [her] that she would make a request to HR, which would then assess [her] worksite." Chapin forwarded this request to her supervisor, Amy Thompson. Later that day, Thompson emailed the regional Assistant Director of the VA that two "disabled veterans" were "being considered for assessment of accommodation needs," further asking "what are our options on parking for these or similar individuals?" This email was forwarded to regional VA Director Bocchicchio.

The second instance occurred on April 13, 2009, when Wilson met with White—then her direct supervisor—after White issued Wilson a counseling memorandum for unauthorized parking. Wilson explained her mobility impairments and asked for White's assistance with the request that she made through Chapin. White later testified that this meeting made her aware of Wilson's disability and accommodation request. White promised to communicate with Chapin, but Wilson never received a response.

Whether Wilson followed the VA's policy creates a triable issue of fact because a reasonable juror could find that even Wilson's first two communications with the VA were requests for an accommodation. To illustrate this, we quote the relevant portions of the VA's own reasonable accommodation policy in explaining why. On March 31, 2009, Wilson, "a VA employee," made a request to a representative, Chapin, who "may" and did "request an accommodation" on her behalf, which Chapin forwarded as representative to "her [own] immediate supervisor," Amy Thompson. If this was not enough, Thompson testified that she then forwarded it to the regional Director and the Assistant Director of the VA, who as supervisors (even if not immediate) were either procedurally or practically responsible for forwarding the request to HR. And on April 13, 2009, Wilson made "a request for a reasonable accommodation . . . orally . . . to [her] immediate supervisor," Eboni White. Thus, the VA's position that there are no triable issues of fact as to whether Wilson *procedurally* made an appropriate request is unsound.

Further, under the Rehabilitation Act, Wilson needed only request the accommodation and demonstrate that it is reasonable. *Willis*, 108 F.3d at 284–85. It was therefore sufficient that Wilson requested to park on-site and justified her request by informing the VA about her mobility limitations and her belief that the accommodation would resolve the issue. We thus find that a jury could reasonably determine that Wilson made a specific request for accommodations, sufficient to notify the VA, before July 8, 2009.

## B.

We now consider whether the district court properly granted summary judgment on Wilson's discrimination claim to the VA on the basis that she caused a breakdown in the interactive process by failing to provide the requested documentation.

After the VA was notified of Wilson's disability and her requests, it was obligated to "make a reasonable effort to determine the appropriate accommodation." *See Gaston*, 167 F.3d at 1364 (internal quotation marks omitted). Wilson alleges that the VA did not fulfill that obligation. And both parties acknowledge that the interactive process was ultimately unsuccessful. Even so, we have held that "liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). But Wilson alleges that the process broke down because of the VA's actions—not her own.

Taking the facts in the light most favorable to Wilson, there is at least a genuine issue of material fact as to whether the VA, rather than Wilson, was responsible for the breakdown of the interactive process. It took the VA four months to even attempt to initiate the interactive process, despite being repeatedly placed on notice of Wilson's disability and her request. A jury could thus find that the VA's four-month-long inaction in addressing Wilson's request constitutes a failure to accommodate in violation of its obligations under the Rehabilitation Act, regardless of Wilson's subsequent failure to provide the documentation. Even still, a jury could reasonably construe Smith's July 16, 2009 response to Wilson's accommodations requests as a denial.

Having found that Wilson properly sets out a prima facie case of disability discrimination under the Rehabilitation Act, we reverse summary judgment on Wilson's discrimination claim.

## IV.

The second issue that Wilson raises on appeal is whether the district court erred in finding that she failed to establish a prima facie showing of retaliation by the VA. Here, Wilson argues that her efforts to accommodate her own disability by parking on-site despite the VA's discrimination constituted a protected activity that caused her termination and later non-selection. We affirm the grant of summary judgment to the VA on this issue.

The Rehabilitation Act incorporates the anti-retaliation provision of the ADA. *See* 29 U.S.C. § 794(a), (d); 42 U.S.C. § 12203(a).

20-10799                Opinion of the Court                17

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this [Act]." 42 U.S.C. § 12203(a). ADA retaliation claims are analyzed under the same framework as Title VII. *See Stewart,* 117 F.3d at 1287.

Because we have held that "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa," we thus analyze retaliation claims under the Rehabilitation Act under the same framework. *Cash*, 231 F.3d at 1305 n.2. Therefore, to establish a prima facie retaliation claim, Wilson must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) there was a causal relationship between the action and her protected activity. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1316 (11th Cir. 2007).

Title VII's opposition clause makes it unlawful to discriminate against an employee "because he has opposed any practice made an unlawful employment practice" by the clause. 42 U.S.C. § 2000e-3. A plaintiff stating that she engaged in protected activity under the opposition clause must have staged her "opposition" on "a good-faith, reasonable belief that the employer was engaged in unlawful employment practices." *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2012).[3]

---

[3] Although this case applies Title VII, we establish in the preceding paragraph of this opinion that we analyze retaliation claims brought under the Rehabilitation Act using the same framework as the ADA, and therefore, Title VII.

Wilson argues that her unauthorized parking was protected activity because it was done in protest of the VA's discrimination. Wilson also notes the Supreme Court's holding in *Crawford v. Metropolitan Government of Nashville* that "oppose" as used in the opposition clause carries its ordinary meaning of "to resist . . . [or] to contend against." 555 U.S. 271, 276 (2006). From this, Wilson argues that her unauthorized parking constitutes civil disobedience and is thus protected conduct for ADA purposes. Wilson also asserts for the first time on appeal that a reasonable factfinder could find that her persistence in demanding accommodations, apart from the parking itself, was the cause of her termination.

The VA responds that Wilson failed to show either that she "engaged in a statutorily protected expression" or a "causal link" existed between the expression and the adverse employment action that she suffered. *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016). The VA further argues that Wilson's parking violations were not protected activity because her alleged belief that she was acting in civil disobedience was not objectively reasonable. The VA adds that there were alternative appropriate grounds for summary judgment, including the fact that her poor performance was another reason for her termination, and that she was not the most qualified candidate for the position she applied for thereafter.

First, Wilson's argument that her parking requests were independent protected activity is new on appeal. Because this court will generally not consider an issue raised for the first time on

appeal, this argument is waived. *Finnegan v. Comm'r of Internal Revenue*, 926 F.3d 1261, 1270–71 (11th Cir. 2019).

Second, even if Wilson's unauthorized parking was protected, her retaliation claim fails because she does not demonstrate that the VA's other basis for her termination—Wilson's sub-par work performance—was pretextual. She thus cannot show "that the protected activity was causally connected to the adverse employment action." *Garrett*, 507 F.3d at 1316. To show causation, "a plaintiff merely has to prove that the protected activity . . . and the adverse action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation marks omitted and alteration adopted). The employer can then proffer a legitimate, non-retaliatory reason for the adverse action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Once the employer proffers a legitimate, non-retaliatory reason, the plaintiff bears "[t]he ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *Id.* A reason is not pretextual unless it is shown both that it was false, and that discrimination was the real reason. *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

In addition to Wilson's parking violations, the VA also cited her poor work performance as justification for her termination. The VA produced evidence that the regional VA Director considered that Wilson "failed to meet the minimum monthly expected 184 end products," produced numerous errors in her work that had

to be corrected by supervisors, and "requested overtime pay for hours she did not work and received a counseling memo for doing so." To this point, Wilson does not dispute that her record was unsatisfactory, and she did not produce evidence that would lead a reasonable jury to find pretext. *See Brooks*, 446 F.3d at 1163. Nor does she offer evidence to rebut the VA's defense that she was not the most qualified applicant for the positions she applied for. We thus affirm the grant of summary judgment on Wilson's retaliation claim.

## V.

Upon review of the district court's decision, we reverse in part and affirm in part. We reverse the district court's grant of summary judgment on Wilson's discrimination claim because a reasonable jury could conclude that Wilson made a reasonable request for an accommodation and that the VA did not engage in the interactive process in good faith. We affirm the district's grant of summary judgment on Wilson's retaliation claim because Wilson cannot demonstrate that her termination was pretextual.

**REVERSED IN PART AND AFFIRMED IN PART.**