[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11963

Non-Argument Calendar

_____

TIMETHIA BROWN,

Plaintiff-Appellee-
Cross Appellant,

*versus*

ADVANCED CONCEPT INNOVATIONS, LLC,

Defendant-Appellant-
Cross Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:19-cv-02888-TPB-AAS

_____

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Timethia Brown was working as a customer service representative for Advanced Concept Innovations, LLC ("ACI"), a contract packing and manufacturing company, when she became pregnant. Her pregnancy was complicated by hyperemesis gravidarum, a condition characterized by nausea and severe vomiting, and by changes in saliva, including ptyalism, or excessive saliva. As a result, she was forced to take and exhaust her FMLA[1] leave during her pregnancy. Yet Brown found that she could prevent vomiting by spitting regularly and not swallowing saliva.

To manage her medical condition when she returned to work, Brown brought a cup with her to spit saliva into. On the morning of her return, ACI management told her she could not use a spit cup if she wanted to continue working there, citing sanitation and cleanliness requirements for its production area, where no more than 20% of Brown's job occurred. The rest of her job was

_____

[1] The Family and Medical Leave Act ("FMLA") entitles eligible employees to take up to twelve weeks of unpaid leave per year for serious health conditions, among other reasons. *See* 29 U.S.C. § 2612(a)(1). Upon returning from FMLA leave, the employee is entitled to be restored to her former position or to an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).

in ACI's administrative area, where use of a spit cup was not prohibited. Brown said she could still work and do her primarily clerical job, but ACI did not offer or discuss any accommodations to retain her. As a result, her employment was terminated. Brown sued, claiming in part that ACI violated the Florida Civil Rights Act ("FCRA") by refusing to provide her with a reasonable accommodation. ACI removed the case to federal district court.

The district court held a jury trial lasting two days. After Brown put on all her evidence, ACI moved for judgment as a matter of law. The court took the matter under advisement, and ACI called several witnesses in its defense.

The jury found ACI liable for violating the FCRA. It found that a reasonable accommodation existed that would have allowed Brown to perform the essential functions of the job and would not have imposed an undue hardship on ACI's business. And it determined that ACI failed to provide a reasonable accommodation or engage in good-faith efforts to accommodate Brown. The jury awarded $34,440 for lost wages and benefits, $10,000 for emotional pain and mental anguish, and $50,000 in punitive damages.

After the verdict, ACI renewed its motion for judgment as a matter of law and alternatively moved for a new trial on the FCRA claim. It also requested that the award of punitive damages be set aside. The court denied ACI's challenge to the verdict on the FCRA claim, concluding that it was adequately supported by the trial evidence. But the court granted relief from punitive damages

because, in its view, no reasonable jury could have found that ACI acted with the requisite malice or reckless indifference.

ACI appeals the denial of its motions for judgment as a matter of law or, alternatively, for a new trial on Brown's failure-to-accommodate claim.  Brown cross-appeals the order setting aside the punitive-damages award.

## I.

We start with the FCRA failure-to-accommodate claim.  We review *de novo* a district court's decision to grant or deny judgment as a matter of law, construing the evidence in the light most favorable to the non-moving party.  *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005); *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1215 (11th Cir. 2004).  A district court should grant judgment as a matter of law only when the plaintiff "presents no legally sufficient evidentiary basis for a reasonable jury to find for [her] on a material element of [her] cause of action." *Pickett*, 420 F.3d at 1278.

We review the denial of a motion for a new trial for an abuse of discretion.  *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988).  District courts may grant a motion for a new trial "if the verdict is against the great, not just the greater, weight of the evidence." *Id.*  "This rule does not, however, grant a license to the trial judge merely to substitute his judgment for that of the jury on questions of fact." *Id.*

## A.

An employer violates the FCRA if it fails "to make reasonable accommodation for an otherwise qualified disabled employee." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225–26 (11th Cir. 2005) (citing 42 U.S.C. § 12112(b)); *see D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1021 (11th Cir. 2020) ("Given the parallel structure of the statutes, this Court analyzes state-law disability discrimination claims under the FCRA using the same framework as it does for claims made under the federal Americans with Disabilities Act (ADA)."). An otherwise "qualified individual" is someone "able to perform the essential functions of the employment position that [s]he holds or seeks with or without reasonable accommodation." *D'Angelo*, 422 F.3d at 1226.

Reasonable accommodations may include job restructuring, modified work schedules, or reassignment to a vacant position. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001).

"Essential functions are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Holly v. Clairson Indus.*, 492 F.3d 1247, 1257 (11th Cir. 2007) (quotation marks omitted). A job function may be considered essential when "the position exists to perform that function," there are few employees "available among whom the performance of that job function can be distributed," or the function is "highly

specialized." 29 C.F.R. § 1630.2(n)(2). Evidence of whether a function is essential includes the employer's judgment as to which functions are essential, written job descriptions, the amount of time spent performing the function, the consequences of not requiring the individual to perform the function, the experience of those who previously held the job, and the experience of those currently in similar jobs. *Id.* § 1630.2(n)(3).

Even if an employer failed to provide a reasonable accommodation, the employer may still avoid liability by showing "that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A).

## B.

ACI argues that Brown failed to prove that a "reasonable accommodation existed that would have allowed her to perform the essential elements of the Quality Control Document Reviewer position." It cites evidence showing that, upon her return from FMLA leave, Brown had been transferred from her position as a Customer Service Representative to a new position as a Quality Control Document Reviewer, which likewise required time on the production floor as an essential duty. Because Brown's evidence related solely to the old position, in ACI's view, it was insufficient to show that a reasonable accommodation existed for the new position or to contradict ACI's evidence regarding the essential functions of the new position.

Here, viewing the evidence in the light most favorable to Brown, a reasonable jury could have determined that Brown was entitled to relief under the FCRA.  We assume without deciding that, because of sanitary and cleanliness requirements in the production area, ACI could prohibit Brown from having a spit cup in the production area without violating the FCRA.  But an ACI witness admitted that a spit cup would not interfere with Brown's duties in the administrative area, and Brown sought an accommodation that would relieve her of her production-area duties.  Because an employer is not required to change the essential functions of a position as an accommodation, *Lucas*, 257 F.3d at 1260, the question is whether "reasonable jurors could differ as to whether [physical presence in the production area] is an essential function," *Samson v. Fed. Express Corp.*, 746 F.3d 1196, 1202 (11th Cir. 2014).  We conclude that they could.

To start, a reasonable jury could have found that being in the production area was not an essential function of Brown's old customer service position.  Brown and ACI witnesses testified that the old position was primarily clerical and involved no more than 20% of her time in the production area.  That testimony is consistent with ACI's job description for the position, which does not list being in the production area among the job's "Essential Duties and Responsibilities."  Brown also testified that the customer service team had a "buddy system" that involved sharing production-area duties, and that she could still do the job's essential functions from her desk in the administrative area.

While ACI presented contrary evidence, the jury was entitled to resolve any factual disputes in Brown's favor. So if being in the production area was not an essential function, the jury reasonably could have found that a reasonable accommodation included restructuring of the position to exclude those duties. *See Lewis*, 257 F.3d at 1260 ("[T]he ADA may require an employer to restructure a particular job by altering or eliminating some of its marginal functions."). And Gomez confirmed in her testimony that Brown could use a spit cup in the administrative area without issue.

Even assuming the new document-review position is our guidepost, a reasonable jury could have drawn similar conclusions about that position as well. The jury received evidence of ACI's job description for the new document-review position, which outlined the job's "Primary Responsibilit[ies]." *See Lucas*, 257 F.3d at 1258 ("[I]f an employer has prepared a written description for the job, this description shall be considered evidence of the essential functions of the job." (cleaned up)). Although the listed duties for the new position included routine interaction with the quality control or manufacturing groups, they did not specifically require time in the production area, and the bulk of the duties involved document review, which seemingly could be done in the administrative area.

ACI points out that a separate section of the job description regarding "Physical Demands" indicated that "walking to and from the production area is required." But a jury would not be required to conclude from this statement alone that physical presence in the

production area was essential to the job. That the job as originally conceived included a function—here, time in the production area—does not alone make the function essential. Otherwise no "job restructuring" could ever be a reasonable accommodation. *See* 42 U.S.C. § 12111(9)(B).

Plus, the jury had before it more than just the job description. It also heard testimony about the new position from ACI managers Matthew Muller, the President of Administration, and Yorky Gomez, the President of Operations and part-owner of the company. These witnesses described the job largely in administrative or clerical terms—"get[ting] in the nitty-gritty of the documents"—and indicated that it was broadly equivalent to Brown's old position and comparable in terms of its production-area duties. *See* 29 C.F.R. § 1630.2(n)(vii) (evidence of whether a job function is essential includes "[t]he current work experience of incumbents in similar jobs").

The evidence also indicates that, in the new position, Brown would have been working with employees in the quality-control group. And ACI's witnesses did not dispute that there were employees "available among whom the performance of [the production-area duties] can be distributed." 29 C.F.R. § 1630.2(n)(2)(ii). Rather, their testimony focused on the burdens to other employees

and the company of "dumping 20 percent of her work on these other employees."[2]

Considered as a whole, we believe that the trial evidence provided a legally sufficient evidentiary basis for the jury to find that physical presence in the production area was not an essential function of either the old customer-service position or the new document-review position. *See Pickett*, 420 F.3d at 1278. And ACI does not challenge the sufficiency of the evidence to support the jury's finding that providing a reasonable accommodation to Brown would not have imposed an undue hardship on the company's operations. *See* 42 U.S.C. § 12112(b)(5)(A); *see also id.* § 12111(10)(A); 29 C.F.R. § 1630.2(p). So, any challenge to that finding has been abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not raised on appeal are abandoned).

Because the evidence was legally sufficient to sustain the jury's verdict against ACI on Brown's failure-to-accommodate claim, the district court also did not abuse its discretion by denying a new trial based on the weight of the evidence. The jury's findings were supported by the evidence, so it was within the court's discretion not to disturb them. *See Ard*, 849 F.2d at 520.

---

[2] Notably, Gomez did not address the possibility of redistributing job duties from other employees to Brown to balance out the workloads.

For these reasons, we affirm the judgment against ACI on Brown's failure-to-accommodate claim under the FCRA.

## II.

Next, we consider Brown's cross-appeal of the district court's decision to grant judgment as a matter of law and set aside the punitive damages award of $50,000.

### A.

Punitive damages are available in employment-discrimination cases under the ADA. 42 U.S.C. § 1981a(a)(2). To recover punitive damages, the complaining party must show that the employer engaged in discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Id.* § 1981a(b)(1).

This standard means "that the employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (quotation marks omitted); *see Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534–35 (1999) (explaining that these terms "focus on the actor's state of mind" and "pertain to the employer's knowledge that it may be acting in violation of federal law"). But "lack of ill will" by management "is not sufficient, in and of itself, to bar punitive damages." *W&O*, 213 F.3d at 611.

No showing of malice has been made, so we focus on reckless indifference. "A jury may find reckless indifference where the

employer does not admit that it knew that its actions were wrong. However, mere negligence as to the civil rights of employees is not enough to justify punitive damages." *Id.* (citations omitted).

## B.

Here, sufficient evidence supports the jury's award of punitive damages, so we vacate the district court's grant of judgment as a matter of law and reinstate the verdict. We begin by noting that ACI does not dispute that its managers were aware of the company's obligations to provide a reasonable accommodation. For instance, ACI previously had accommodated a pregnant woman with a similar, though milder, ptyalism condition.

The trial evidence supports a finding that ACI made no attempt to provide a reasonable accommodation.[3] When Brown returned to work from FMLA leave and requested an accommodation to manage her pregnancy-related medical condition, ACI made no effort to identify or make a reasonable accommodation that would permit her to perform the essential functions of the job. It did not even offer her the accommodation it had previously given a pregnant employee with a similar condition, despite claims at trial that Brown was a valued employee whom ACI wanted to retain. ACI simply told her there was no place for her, even though

---

[3] ADA regulations generally require employers to engage in an "interactive process" to determine reasonable accommodations once an accommodation has been requested. *See Gaston v. Bellingrath Gardens & Homes, Inc.*, 167 F.3d 1361, 1364 (11th Cir. 1999); 29 C.F.R. § 1630.2(o)(3).

a reasonable accommodation was available. It then created documentation falsely suggesting that Brown had voluntarily resigned, rather than been terminated for not being able to perform the duties of the position. *See* Doc. 88-3 at 2 ("We are sorry you elected not to stay and work yesterday."). Although a close call, we believe that the jury was presented with sufficient evidence to support a finding that ACI acted with reckless indifference to the civil rights of an employee with a manageable medical condition who was ready and willing to perform the essential functions of the job.

The district court also relied on ACI's prior favorable treatment of Brown to justify setting aside the punitive-damages award. But the jury reasonably could have concluded that ACI's generosity to Brown in the past did not excuse its failure to comply with civil-rights law in this instance. That ACI generally liked Brown does not preclude the possibility that it acted with reckless indifference to her civil rights. *Cf. W&O*, 213 F.3d at 611 ("[T]o the extent that W&O's argument depends solely on the fact that its management acted out of the desire to benefit the pregnant women in its employ, it is clear that its managers' and owners' alleged lack of ill will is not sufficient, in and of itself, to bar punitive damages.").

## IV.

For these reasons, in the main appeal, we affirm the denial of ACI's motion for judgment as a matter of law or a new trial on Brown's failure-to-accommodate claim. In the cross-appeal, we vacate the grant of ACI's motion for judgment as a matter of law on the issue of punitive damages and reinstate the jury's punitive-

damages award.[4]  We remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[4] The district court may consider ACI's alternative request for remittitur of punitive damages on remand.